IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:18-CV-980

MELISSA RENEE GOODALL, JEREMY WAYDE GOODALL, SHAUNA LEIGH ARRINGTON, JEFFERY PHILLIP ARRINGTON, KARLA JO KROEKER, RYAN MARK TIPPLE, REP. DOUGLAS LAMBORN, and LAMBORN FOR CONGRESS,

    Plaintiffs,

v.

WAYNE W. WILLIAMS, in his official capacity as Colorado Secretary of State,

    Defendant.

## MOTION FOR PRELIMINARY INJUNCTION

Plaintiffs Melissa Renee Goodall, Jeremy Wayde Goodall, Shauna Leigh Arrington, Jeffery Phillip Arrington, Karla Jo Kroeker, Ryan Mark Tipple, Representative Douglas Lamborn, and Lamborn for Congress respectfully move this Court for entry of an order enjoining Secretary of State Wayne Williams to certify the nominating petition for Representative Douglas Lamborn and directing the Secretary to certify the designation of Douglas Lamborn to the 2018 Republican primary election ballot in Colorado's Fifth Congressional District. Recent Tenth Circuit case law demonstrates that Colorado's residency requirement for petition circulators is unconstitutional and unenforceable. The Tenth Circuit, as well as federal courts in several other circuits, have applied strict scrutiny to, and struck down as unconstitutional, residency requirements for petition circulators.

**CONFERRAL**

Pursuant to D.C.Colo.L.CivR 7.1(A), Plaintiffs' counsel has conferred with counsel for the Secretary of State regarding the subject matter of this motion. The Secretary of State opposes the relief sought.

**STATEMENT OF FACTS**

Colorado law has long provided that candidates for public office of a major political party have two mechanisms to gain access to a major political party's primary election ballot and thereby win their party's nomination. Section 1-4-102 of the Colorado Revised Statutes provides that candidates for nominations to be made at any primary election may be placed on the ballot either by certificate of designation by a political party assembly, or by petition. Sections 1-4-801 and 1-4-901, et seq., outline the requirements and process by which candidates may be placed on the primary election ballot by petition.

On January 9, 2018, Congressman Lamborn declared his candidacy for re-election and intent to seek his party's nomination through the 2018 Republican Primary Election to be held on June 26, 2018. A petition format was approved by the Colorado Secretary of State for Congressman Lamborn, and nominating petitions were subsequently circulated and signatures collected from Republican electors by volunteer and paid professional circulators. On March 6, 2018, Lamborn for Congress submitted nominating petitions to the Colorado Secretary of State in accordance with C.R.S. § 1-4-801 in support of the designation of Doug Lamborn to the primary election ballot.

On March 29, 2018, after the extensive line-by-line signature verification process required by state law and in accordance with rules promulgated by the Colorado Secretary of

State, Colorado Secretary of State Wayne Williams announced that Congressman Lamborn had obtained the requisite number of petition signatures to successfully petition onto the 2018 Republican primary election ballot for CD5. The Secretary of State found that of the 1,783 petition signatures submitted, 1,269 such signatures were deemed valid – well in excess of the 1,000 petition signatures required to obtain primary election ballot access pursuant to C.R.S. § 1-4-801(2)(b). There is no question about the validity of the signatures themselves.

Five days after the Secretary of State issued a Statement of Sufficiency to Congressman Doug Lamborn certifying him to the 2018 Republican primary ballot for Colorado's Fifth Congressional District ("CD5"), several registered voters ("the Challengers") from CD5 filed a petition under C.R.S. §§ 1-1-113(1) and 1-4-909 on April 3, 2018. The Challengers claimed that Lamborn for Congress illegally gathered signatures in support of Congressman Doug Lamborn's candidacy because the campaign committee used professional petition circulators who allegedly were not residents of Colorado as required by C.R.S. § 1-4-905, even though all of the circulators who gathered signatures were, at the time of petition circulation, registered Republican electors.

In the proceeding before the District Court for the City and County of Denver, the court made both legal rulings and factual findings with respect to the residency of each of the seven petition circulators challenged by the Challengers, finding by a preponderance of the evidence that only one of the petition circulators was not a Colorado resident and as a result disallowed 58 signatures collected by that particular circulator. The court found by a preponderance of the evidence that each of the other petitioners, including Plaintiff Ryan Mark Tipple, were in fact Colorado residents and therefore the 1,211 petition signatures they collected were valid, and

upheld the finding of sufficiency of Congressman Lamborn's nominating petition by the Secretary of State.

The Challengers filed an expedited appeal to the Colorado Supreme Court pursuant to C.R.S. § 1-1-113(3), focusing solely on the district court's finding that Plaintiff Ryan Mark Tipple was a resident of Colorado. After expedited briefing the Court issued its decision on April 23, 2018, holding that the district court had "improperly focused on Tipple's stated future intent to move to Colorado, rather than considering whether Tipple presently has a primary or principal place of abode in Colorado to which he intends to return, as confirmed by objective indicia of residency." *Kuhn v. Williams*, No. 18SA176, slip op. at 5. Without the signatures collected by Tipple, Congressman Lamborn fell short of the 1,000 signatures required to be on the primary ballot by 58 signatures. Therefore, the Court ordered that the Secretary of State may not certify Congressman Lamborn to the 2018 Republican primary ballot, even though there is no question that Congressman Lamborn received well in excess of the valid number of signatures to place his name in nomination. *Id.* at 25.

In defending the sufficiency of the petition before the Colorado Supreme Court, Lamborn for Congress argued in the alternative that the residency requirement for petition circulators violates the First Amendment. The Colorado Supreme Court acknowledged the constitutional argument, but declined to address it based on the jurisdictional limits of its review authority. *Id.* at 24-25, 26.

## STANDARD OF REVIEW

A party seeking a preliminary injunction or temporary restraining order must show (1) a likelihood of success on the merits; (2) a likelihood that the movant will suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the movant's favor; and (4) that the injunction is in the public interest." *Browne v. City of Grand Junction*, 27 F. Supp. 3d 1161, 1165 (D. Colo. 2014) (citing *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1208 (10th Cir. 2009)). *See also Winter v. Natural Resources Defense Council*, 555 U.S. 7 (2008). Concerning motions for a preliminary injunction which seek an alteration of the status quo, a "strong showing" is required with regard to likelihood of success on the merits and balance of the equities. *O Centro Espirita Beneficente Uniao do Vegetal v. Ashcroft*, 389 F.3d 973, 975 (10th Cir. 2004).

Although Plaintiffs' motion satisfies each of these elements, "in First Amendment cases, the likelihood of success on the merits will often be the determinative factor." *Hobby Lobby Stores v. Sebelius*, 723 F.3d 1114, 1145 (10th Cir. 2013) (internal quotations omitted). Moreover, where, as here, the state has the ultimate burden to demonstrate that its challenged statute is narrowly tailored to achieve a compelling interest, Plaintiffs will be deemed likely to prevail on the merits if the state fails to carry its burden. *See Gonzales v. O Centro Espirita Beneficente do Vegetal*, 546 U.S. 418, 429 (2006) (the burdens in a preliminary injunction setting track the burdens at trial); *Ashcroft v. Am. Civil Liberties Union*, 542 U.S. 656, 666 (2004) (plaintiffs must be deemed likely to prevail absent government showing that challenged provision is narrowly tailored).

As discussed below, the residency requirement is not narrowly tailored to achieve a compelling government interest. Indeed, newly enacted Colorado legislation better achieves the state's interests and renders the residency requirement unnecessary. Plaintiffs are highly likely to succeed on the merits.

**ARGUMENT**

I. **PLAINTIFFS ARE HIGHLY LIKELY TO SUCCEED ON THE MERITS BECAUSE COLORADO'S RESIDENCY REQUIREMENT FOR PETITION CIRCULATORS VIOLATES FREE SPEECH RIGHTS.**

The circulator residency requirement of section 1-4-905(1) is a clear violation of the freedom of speech. The relevant case law demonstrates that it is not even a particularly close question.

The First Amendment states, "Congress shall make no law. . . abridging the freedom of speech." U.S. Const. amend. I. The First Amendment was fashioned to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people. *Chandler v. City of Arvada*, 292 F.3d 1236, 1241 (10th Cir. 2002) (internal quotations omitted). The Tenth Circuit has previously held that petition circulation is considered core political speech, as it involves interactive communication concerning political change. *Yes on Term Limits, Inc. v. Savage*, 550 F.3d 1023, 1028 (10th Cir. 2008) (holding Oklahoma's ban on non-resident petition circulators unconstitutional); *see also Meyer v. Grant*, 486 U.S. 414, 422 (1988) ("the circulation of a petition involves the type of interactive communication . . . that is appropriately described as 'core political speech'").

Because circulation of a petition is core political speech, "First Amendment protection for such activity is . . . at its zenith." *Chandler*, 292 F.3d at 1241 (internal quotations omitted);

6

*see also Meyer*, 486 U.S. at 422. Indeed, applying strict scrutiny, the United States Supreme Court has declared unconstitutional various state restrictions on petition circulators, including a state's attempt to prohibit paying petition circulators, *Meyer*, 486 U.S. at 425; a state's attempt to limit petition circulators to that state's registered voters, *Buckley v. American Constitutional Law Found.*, 525 U.S. 182, 197 (1999); and a state's attempt to mandate petition circulators wear identification badges revealing the name of the petition circulator, *id.* at 199-200.

Accordingly, the Tenth Circuit recognizes that government attempts to regulate the circulation of petitions – including residency requirements – are subject to strict scrutiny. *Chandler*, 292 F.3d at 1241. Thus, any such restrictions on the circulation of petitions must be narrowly tailored to serve a compelling state interest. *Id.* (quoting *Campbell v. Buckley*, 203 F.3d 738, 745 (10th Cir. 2000)).

In *Chandler*, the City of Arvada's ordinance required circulators of initiatives, referenda, or recall petitions to be residents of Arvada. The City argued its ordinance was narrowly tailored to prevent fraud, malfeasance, and corruption in municipal elections within the City. *Id.* at 1239. The Tenth Circuit held that the ordinance was not "vital to" the City's interest in "ensuring the integrity of Arvada's petition process," and that the ordinance was substantially broader than necessary to ensure the integrity of the petition process. *Id.* at 1244. In explaining why the ordinance was not narrowly tailored to achieve the City's compelling interest, the Tenth Circuit noted that a far less restrictive alternative could accomplish the City's purposes – namely, the ordinance could require all circulators to submit to Arvada's jurisdiction and therefore its subpoena power. *Id.* Indeed, the court indicated that such an alternative would be even more

7

effective at accomplishing the City's purposes than the residency requirement. *Id.* The Court therefore struck down the residency requirement.

The Tenth Circuit's decisions in *Chandler* and *Yes on Term Limits* are consistent with the decisions of other federal jurisdictions. Residency restrictions for petition circulators have been declared unconstitutional in the Second, Fourth, Sixth, Seventh, and Ninth Circuits. *See Lerman*, 232 F.3d at 149-53 (applying strict scrutiny to residency requirement for candidate petition circulators); *Libertarian Party of Virginia v. Judd*, 718 F.3d 398 (4th Cir. 2013) (applying strict scrutiny to Virginia residency requirement); *Nader v. Blackwell*, 545 F.3d 459 (6th Cir. 2008) (applying strict scrutiny to Ohio ban on nonresidents circulating nominating petitions); *Krislov v. Rednour*, 226 F.3d 851, 863 (7th Cir. 2000) (applying strict scrutiny to statute requiring candidate petition circulators to be registered voter in political subdivision in which candidate is seeking office); *Nader v. Brewer*, 531 F.3d 1028 (9th Cir. 2008) (applying strict scrutiny to residency provisions relating to nominating petitions and circulator-witnesses).

Here, the State of Colorado has already adopted a less restrictive alternative which entirely obviates the supposed need for the residency requirement. The Colorado General Assembly recently passed legislation requiring the Secretary of State to verify the validity of each and every signature on a candidate petition against the state signature database. Section 1-4-908(1.5) of the Colorado Revised Statutes states:

> [I]n any election conducted after January 1, 2018, for any petition that must be filed with the secretary of state in accordance with section 1-4-907, the secretary of state shall compare each signature on a candidate petition with the signature of the eligible elector stored in the statewide voter registration system.

This requirement was adopted in 2017 in response to documented forgeries of voter signatures on candidate petitions in 2016. It obviates the role of circulators in preventing signature fraud –

8

the only potential state interest supporting Colorado's residency requirement for petition circulators. Therefore, there is no longer *any* state interest – let along a compelling one – supporting Colorado's requirement at C.R.S. § 1-4-905 that candidate petition circulators be Colorado residents. *Cf. Lerman v. Board of Elections*, 232 F.3d 135, 150 (2d Cir. 2000) (rejecting state's justification for residency requirement for petition circulators in part because "verification of petition signatures has become considerably easier than it once was given the use of signature imaging technology"). Hence, this Court must hold the residency requirement unconstitutional.

The Secretary of State may attempt to distinguish between residency requirements for *initiative* petition circulators – which the Tenth Circuit has declared unconstitutional in both *Chandler* and *Yes on Term Limits* – and *candidate* petition circulators. Any such distinction, as the Second Circuit has held, "is rather strained." *Lerman*, 232 F.3d at 148. First, none of the Tenth Circuit's case law suggests that a residency requirement is somehow more narrowly tailored to accomplish the prevention of fraud with respect to candidate petition circulators. In *Yes on Term Limits*, for example, the Tenth Circuit rejected justifications for Oklahoma's residency requirement for initiative petition circulators that would have been equally applicable to candidate petition circulators. 550 F.3d at 1029 (rejecting state's arguments that non-resident circulators have a demonstrated lack of integrity and propensity to flout state laws, and that non-residents are more difficult to locate and question).

Second, other circuits have rejected this distinction and have struck down residency requirements for candidate petition circulators. As the Second Circuit noted, "[t]here is no basis to conclude that petition circulation on behalf of a candidate involves any less interactive

political speech than petition circulation on behalf of a proposed ballot initiative – the nature of the regulated activity is identical in each instance." *Lerman*, 232 F.3d at 148. Indeed, the *Lerman* court observed that if the distinction has any relevance at all, "it may well suggest . . . that the witness residence requirement places an even greater burden on candidate petition circulators than on initiative petition circulators." *Id.* at 149. The court explained:

> Unlike initiative campaigns, which typically concern a single issue, campaigns for political office typically require candidates to advance their positions on a variety of issues. As a result, individuals who circulate petitions on behalf of candidates . . . typically must speak to a broader range of political topics than those who circulate petitions in support of ballot initiatives, and by limiting the number of individuals available to circulate petitions on behalf of candidates, the . . . witness residence requirement "has the potential to squelch a greater quantity and broader range of political speech than laws which only restrict initiative proponents."

*Id.* (quoting *Krislov v. Rednour*, 226 F.3d 851, 861-62 (7th Cir. 2000)).

Finally, the Secretary of State may argue that the residency requirement protects the associational rights of political parties, which otherwise could be impaired by allowing petition circulators not affiliated with that party to circulate candidate nominating petition. But the party affiliation of the circulator is not material.[1] Rather, what is material is the associational rights of the party, as reflected in the voters and members of that party who actually sign the nominating petitions, which demonstrate the "significant modicum of support" in order for a candidate of that party to qualify for a place on the primary election ballot.

In short, Plaintiffs are highly likely to succeed on the merits of their claim that the residency requirement of C.R.S. § 1-4-905 places an unconstitutional burden on the First Amendment rights of Plaintiffs. This is especially true in light of Colorado's new statutory

---

[1] That said, there is no question that the circulators were all registered Republicans at the time they circulated the petitions for Congressman Lamborn.

10

requirement for the Secretary of State to verify each and every signature on a candidate petition – a requirement which effectively eliminates whatever justification there may have been for the residency requirement for petition circulators.

## II. IN THE ABSENCE OF INJUNCTIVE RELIEF, PLAINTIFFS WILL SUFFER IRREPARABLE HARM.

Given the strength of Plaintiffs' constitutional claim on the merits, "the remaining preliminary injunction factors are not far from reach." *United Utah Party v. Cox*, 268 F. Supp. 3d 1227, 1259 (D. Utah 2017).

The Supreme Court has held that "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). Thus, even in the context of commercial speech rights, the Tenth Circuit assumes that plaintiffs have suffered irreparable injury when a government deprives plaintiffs of such rights. *Pacific Frontier v. Pleasant Grove City*, 414 F.3d 1221, 1235 (10th Cir. 2005). Indeed, even when infringement of First Amendment rights is **alleged**, irreparable injury is presumed. *Utah Licensed Beverage Ass'n v. Leavitt*, 256 F.3d 1061, 1076 (10th Cir. 2001); *see also*

Here, irreparable injury is imminent in the absence of an injunction. Congressman Lamborn will not be on the primary ballot and will lose his ability to seek re-election. *See Brown v. Chote*, 411 U.S. 452, 456 (1973) (affirming district court's finding of irreparable injury where "appellee's opportunity to be a candidate would have been foreclosed absent some relief"). Voters supporting Congressman Lamborn, including those who signed the circulated petitions (including and in particular the Plaintiffs Melissa Renee Goodall, Jeremy Wayde Goodall, Shauna Leigh Arrington, Jeffery Phillip Arrington, Karla Jo Kroeker, and other Republican voters who signed the petition circulated by Mr. Tipple), will not be able to vote for their chosen

candidate and will have their First Amendment expressions of support for Congressman Lamborn's candidacy nullified. *See Anderson v. Celebrezze*, 460 U.S. 780, 787 (1980) ("The exclusion of candidates also burdens voters' freedom of association, because an election campaign is an effective platform for the expression of views on the issues of the day, and a candidate serves as a rallying-point for like-minded citizens."). And Mr. Tipple's rights as a petition circulator will be severely impaired. *See Chandler*, 292 F.3d at 1241 (noting that "[p]etition circulators are akin to handbill distributors in that each seeks to garner public support for his/her viewpoint").

It is worth noting the degree of irreparable injury in this case. The invalidation of the signatures collected by Mr. Tipple, after the fact, not only invalidates the signatures of 269 registered Republican electors in the Fifth Congressional District, it will deny all Republican and unaffiliated voters in the District the opportunity to re-elect a Congressman who has represented the District since 2006. It is hard to imagine a more serious violation of the core First Amendment right of political association.

In proceedings in 2016 involving the designation candidates to the primary election ballot for United States Senate Robert Blaha and Ryan Frazier, Denver District Court Judge Elizabeth Anne Starrs issued certain orders extending the deadline by which the Secretary of State must certify the primary election ballot content to county clerk and recorders while challenges to candidate nominating petitions for those candidates were being considered. However, and in response to the urgent and pending deadlines associated with preparation of the 2016 primary election ballot – particularly the deadlines associated with distributing ballots to Colorado's military and overseas voters under circumstances not dissimilar to those present here – rather

than delaying the ballot certification deadlines, the Colorado Secretary of State requested the district court to reconsider and modify its order to instead permit the Colorado Secretary of State to certify Ryan Frazier to the primary election ballot pending the outcome of his appeal of the district court's initial ruling that his candidate nomination petitions were insufficient. The Secretary of State argued that if the district court would permit immediate certification of the ballot with Mr. Frazier's name included, provided that Mr. Frazier expressly agreed to pursue a timely appeal of his denial of ballot access and voluntarily withdraw his candidacy in writing if the Colorado Supreme Court either declined to consider his appeal or otherwise rules in a way that resulted in Mr. Frazier not qualifying for the ballot, that would result in any votes cast for him in the June 2016 primary election not being counted. The state district court so ordered, the Colorado Supreme Court indeed considered the appeal of Mr. Frazier, and remanded the case to the district court, who then issued an Order finding that Mr. Frazier had sufficient valid signatures to qualify him to be on the Republican primary ballot for U.S. Senator. *See, Order Extending Deadline, Order Re: Stay, Secretary's Forthwith Unopposed Motion to Reconsider Order Granting Stay, Order Granting Secretary's Motion to Reconsider,* and *Order* in 2016CV31574 consolidated with 2016CV31575, attached hereto. Here, if this Court similarly orders the Secretary of State to certify Congressman Lamborn's name to the Republican election ballot in the Fifth Congressional District pending the resolution of this federal case and any subsequent appellate proceedings relating to his access to the 2018 Republican primary election ballot, Mr. Lamborn can voluntarily withdraw his candidacy in writing if this Court or any subsequent appellate proceeding results in Mr. Lamborn not qualifying for the ballot, and thus any votes cast for him in the June 2018 primary election would not be counted.

## III. THE BALANCE OF EQUITIES TIPS IN PLAINTIFFS' FAVOR

In considering this prong of the preliminary injunction analysis, this Court must examine whether "the threatened injury to the movant outweighs the injury to the other party under the preliminary injunction." *Heideman v. South Salt Lake City*, 348 F.3d 1182, 1190 (10th Cir. 2003). Absent an injunction, Plaintiffs' First Amendment rights will be irreparably harmed, as discussed above. On the other hand, the State of Colorado has no legitimate interest in the enforcement of an unconstitutional law. *E.g., American Civil Liberties Union v. Ashcroft*, 322 F.3d 240, 247 (3d Cir. 2003) ("[T]he Government does not have an interest in the enforcement of an unconstitutional law."); *New York Progress & Protection PAC v. Walsh*, 733 F.3d 483, 488 (2d Cir. 2013) (same); *KH Outdoor, LLC v. City of Trussville*, 458 F.3d 1261, 1272 (11th Cir. 2006) ("the city has no legitimate interest in enforcing an unconstitutional ordinance").

Even setting aside the unconstitutionality of the residency requirement for petition circulators, the State of Colorado would suffer no injury from an injunction because the Secretary of State will continue to enforce and carry out the recently enacted legislation requiring line-by-line verification of petitions. *See* C.R.S. § 1-4-908(1.5). Those verification procedures are far more effective in ensuring the integrity of the petition process.

## IV. AN INJUNCTION TO CERTIFY CONGRESSMAN LAMBORN TO THE BALLOT IS IN THE PUBLIC INTEREST

Granting Plaintiffs an injunction in the present circumstances is not adverse to the public interest. First, "[v]indicating First Amendment freedoms is clearly in the public interest." *Pacific Frontier v. Pleasant Grove City*, 414 F.3d 1221, 1237 (10th Cir. 2005). Conversely, "[t]he public has no interest in enforcing an unconstitutional ordinance." *KH Outdoor*, 458 F.3d at 1273 (citing cases). The public interest is further served by allowing the Republican and unaffiliated

14

voters of CD5 to vote on whether Congressman Lamborn should be re-elected to his seat in Congress. Moreover, as discussed above, the public interest in ensuring the integrity of the petition process will not be undermined by an injunction, given the signature verification requirements of C.R.S. § 1-4-908(1.5), which the Secretary has already faithfully enforced in this instance, and will continue to faithfully enforce with respect to future petitions.

## CONCLUSION

The residency and voter registration requirement for petition circulators, especially as-applied in this case after-the-fact, violates the First Amendment, and Plaintiffs have satisfied the remaining three prongs of the preliminary injunction analysis. Accordingly, Plaintiffs respectfully submit that they are entitled to an order of this Court certifying Mr. Lamborn to the 2018 Republican Primary ballot for CD5.

Dated this 25th day of April 2018.

                                                  s/Ryan R. Call
                                                  Ryan R. Call
                                                  Richard A. Westfall
                                                  Peter J. Krumholz
                                                  HALE WESTFALL LLP
                                                  1600 Stout St., Suite 500
                                                  Denver, CO 80202
                                                  Phone: 720-904-6010
                                                  Fax: 720-904-6020
                                                  rcall@halewestfall.com

**CERTIFICATE OF SERVICE**

I hereby certify that on April 25, 2018, I have served the foregoing pleading via email and the CM/ECF system for the United States District Court for the District of Colorado:

| | |
|---|---|
| Matthew Grove | matt.grove@coag.gov |
| Leann Morrill | leann.morrill@coag.gov |
| Emily Buckley | emily.buckly@coag.gov |
| Michael Francisco | michael@statecraftlaw.com |

*s/Erin Snyder*
Erin Snyder
Hale Westfall, LLP