THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-00980-PAB-KMT

MELISSA RENEE GOODALL, JEREMY WAYDE GOODALL, SHAUNA
LEIGH ARRINGTON, JEFFERY PHILLIP ARRINGTON, KARLA JO
KROEKER, RYAN MARK TIPPLE, REP. DOUGLAS LAMBORN, and
LAMBORN FOR CONGRESS,

       Plaintiffs,

       v.

WAYNE W. WILLIAMS, in his official capacity as Colorado Secretary of State,

       Defendants.

---

### Partially-Unopposed Motion to Intervene

---

The Proposed Intervenors, identified below, seek to intervene in this matter as Intervenor-Defendants, and state as follows:

| Conferral under D.C.COLO.LCivR 7.1 |
| --- |
| Undersigned counsel has conferred with Plaintiff Doug Lamborn, who does not oppose intervention of Kuhn, Springer, Isaac, Honken and Schafer. He does oppose intervention by others. Undersigned counsel has conferred with Defendant Colorado Secretary of State, who opposes intervention entirely. |

### Background

All Proposed Intervenors are represented by the same set of co-counsel. Accordingly,

undersigned counsel represents that despite the number of individual intervenors, they will

present all argument and evidence together as a single plaintiff group.

This case arises out of a ballot access challenge brought by Kuhn, Springer, Isaac,

Honken and Schafer in Colorado state court. Colorado has established two means of accessing the primary election ballot. Under Colorado law, a major-party (Democrat or Republican) candidate for political office may obtain nomination to the party primary ballot in one of two ways. First, a candidate may appear at the party assembly and earn either the highest number, or 30% or more, of the votes cast at that assembly. C.R.S. § 1-4-601. Second, candidates may petition on the ballot. Congressman Lamborn sought nomination through this route. Colorado law requires him to collect 1,000 valid signatures. In structuring the petition process, the state has set forth multiple requirements, such as who can circulate a petition, how they must circulate that petition, who may sign, how many voters must sign, strict timelines for signature collection and review, and cure provisions. C.R.S. §§ 1-4-901 through 1-4-912. In addition to Congressman Lamborn, one candidate for the Fifth Congressional District was nominated by assembly process, and three others qualified through the petition route.

Kuhn, Springer, Honken, Isaac, and Schafer challenged Lamborn's petitions, asserting three violations of C.R.S. § 1-4-904. First, under subsection (1), petition circulators must be residents of the state of Colorado. Second, subsection (1) also expressly requires a circulator to be validly registered to vote and be affiliated with the same political party as the candidate for whom they are circulating petitions. Third, subsection (2) requires that a circulator affirm that he or she is a resident of the state of Colorado.

The Denver District Court conducted a one-day hearing on an expedited basis and ruled that one circulator was not a valid Colorado resident or registered voter. The Court therefore struck the signatures he had collected, in accordance with Colorado's longstanding

2

remedy for circulator non-compliance. Even with the loss of these signatures, Lamborn retained enough valid signatures to qualify for the ballot. Upon appeal the Colorado Supreme Court partially overturned the District Court's decision, finding that another circulator did not meet Colorado's residency and party affiliation voter requirements, and struck his signatures. As a result of this decision, Lamborn did not qualify for the ballot and the Colorado Supreme Court ordered the Secretary of State not to place his name on the ballot. Accordingly, he has brought this lawsuit and motion for preliminary injunction.

## Proposed Intervenors

The Proposed Intervenors are as follows, grouped in four categories:

1.     <u>Petitioners in Denver District Court</u>

Michael Kuhn
Ashlee Springer
Lydia K. Honken
Jeremy Isaac
Sharon M. Schafer

This group of Proposed Intervenors filed a complaint in Denver District Court on April 3, 2018, alleging that the candidate nominating petitions submitted by Doug Lamborn were defective, because (1) non-residents circulated the Rep. Lamborn's petitions and collected signatures, (2) non-party members circulated petitions and collected signatures, and (3) petition circulators misrepresented to the public and the Secretary of State that they were residents and registered Republican Party members. Their request for relief partly granted and partly denied by the Denver District Court, but they appealed and prevailed at the Colorado Supreme Court.

2.     <u>Current and former legislators</u>

3

       Representative David Williams
       Representative Alexander "Skinny" Winkler
       Representative Larry Liston
       Representative Kimmi Lewis
       Representative Phil Covarrubias
       Senator Ray Scott, Assistant Majority Leader
       Senator Jerry Sonnenberg, President Pro Tempore
       Senator John Cooke
       Senator Larry Crowder

This group of Proposed Intervenors consists of current and former members of the Colorado General Assembly, who seek to ensure Colorado's ballot access laws remain in place. They are also party members who wish to ensure that candidates for Republican primary elections are nominated by party members, instead of members from other parties or unaffiliated voters. This group of intervenors has experience petitioning onto the ballot in Colorado and are likely seek nomination – either through assembly or petition -- onto the ballot in future elections in Colorado.

     3.    <u>Current Republican Primary candidate for Colorado's Fifth Congressional District.</u>

State Senator Owen Hill is a candidate for Colorado's Fifth Congressional District, competing in the Republican Primary. Like other legislators, he wishes to ensure that the process for nominating candidates for the primary election remain in the hands of Republican Party members only. He also has gained access to the ballot by following exiting Colorado laws, and seeks to ensure that all candidates compete according to the same rules and legal standards. Mr. Hill has a unique interest in the potential of non-party member interference with Colorado's election process for the Fifth Congressional District primary election.

4.      Eric Baldini, a petition signer who was misled by one of Lamborn's petition circulators.

Eric Baldini strongly supports one of Lamborn's rivals, but he signed Lamborn's nomination petition. He did this because a circulator lied to him about the petition, claimed that Baldini was signing a ballot initiative, and told Baldini that he had to sign all three pages (which were in fact three separate petitions). The circulator petitions were struck by state court that Mr. Baldini signed in part because a non-resident circulator misrepresented, on his affidavit, that he was a Colorado resident.

## Reasons to Grant Intervention

**A.     Proposed Intervenors may intervene by right because of their important and unique interest in this case.**

Under F.R.C.P. 24, a movant may intervene by right if "(1) the motion is timely, (2) the movant claims an interest relating to the property or transaction which is the subject of the action, (3) the movant's interest may be impaired or impeded, and (4) the movant's interest is not adequately represented by existing parties."[1] As courts have recognized, the Tenth Circuit "tend[s] to follow a somewhat liberal line in allowing intervention."[2] "Federal courts should allow intervention where no one would be hurt and greater justice could be obtained."[3] The proposed intervenors easily satisfy this test.

---

[1] *Oklahoma ex rel. Edmondson v. Tyson Foods, Inc.*, 619 F.3d 1223, 1231 (10th Cir. 2010) *quoting Elliott Indus. Limited Partnership v. BP Am. Prod. Co.,* 407 F.3d 1091, 1103 (10th Cir.2005).

[2] *Utahns for Better Transp. v. U.S. Dep't of Transp.*, 295 F.3d 1111, 1115 (10th Cir.2002) (quoting *Nat'l Farm Lines v. ICC*, 564 F.2d 381, 384 (10th Cir.1977)).

[3] *Utah Assoc. of Counties v. Clinton*, 255 F.3d 1246, 1250 (10th Cir.2001) (citation and internal quote omitted).

1.      **The motion is timely.**

Lamborn filed his complaint yesterday evening, Wednesday, April 25, 2018. Proposed

Intervenors are filing at approximately 3:30 p.m., the next day, on Thursday, April 26, 2018.

They have moved expeditiously to intervene promptly.

2.      **The Proposed Intervenors have several important interests in this case.**

In determining whether intervenors have a sufficient interest, the Supreme Court has

stated "what is obviously meant ... is a significantly protectable interest."[4] The Tenth Circuit

"has tended to follow a somewhat liberal line in allowing intervention."[5] Accordingly, an

interest must be "direct, substantial, and legally protectable."[6]

The Proposed Intervenors certainly have an interest in defending Colorado's

residency requirement. But they also have three, additional distinct interests.

As a first interest, petitioners seek to prevent party-raiding, by ensuring that candidate

petition circulators are registered with the same party as the candidate for whom they

circulate petitions. Candidate and State Senator Owen Hill, as well as the legislators, have all

gone through Colorado's nomination process, are all Republican Party members, and wish to

ensure that Republicans nominate other Republicans to the Republican primary ballot.

Circulator party affiliation is particularly critical because circulators play *the* central

---

[4] *Donaldson v. United States*, 400 U.S. 517, 531, 91 S.Ct. 534, 27 L.Ed.2d 580 (1971).

[5] *Coalition of Ariz./N.M. Counties for Stable Economic Growth v. Dep't of Interior*, 100 F.3d at 841.

[6] *Coalition of Arizona/New Mexico Counties for Stable Economic Growth v. Department of Interior*, 100 F.3d 837, 840 (10th Cir. 1996).

role in the signature process, and thus they are primarily responsible for keeping the nominating process within the Republican Party. They are the ones who identify and persuade voters to sign petitions. Many voters are reluctant to sign a piece of paper presented by a total stranger. But some Colorado voters are persuaded to sign a candidate petition when a fellow Coloradan, and a fellow party member, tells them about the candidate and the petition process. In particular, a circulator's party affiliation lends credibility to the circulator's efforts in persuading fellow party members to support the nomination of a party candidate for the primary election. The party-affiliation requirement ensures that the party nominating process is conducted and supported by members of the same political party.

In short, several of the proposed intervenors have used the petition process for accessing the ballot and intend to use it in the future. In addition, all Proposed Intervenors are all members of the Republican Party, and they have an interest in defending that political party's associational rights in the nominating process.

The second interest is ensuring the honesty and integrity of circulators. In particular, they all filed their challenge in state court, in part seeking to invalidate signatures because the circulators misrepresented on their affidavits that they were residents and registered Republicans. Furthermore, a Lamborn circulator misled Baldini into signing Lamborn's petition. As the key players who communicate and persuade voters to sign petitions, circulators must be honest and truthful in their communications.

Indeed, the Colorado Supreme Court has on multiple occasions emphasized the critical role circulators have in ensuring the integrity of the signature collection process. "We have concluded that the statutory requirement that circulator affidavits be "notarized" in the

generic sense—that is, executed under oath before a person authorized to authenticate signatures—is appropriately designed to protect against mistake, fraud or abuse in the initiative process and does not unduly restrict the right of citizens to participate in that process."[7] Likewise, "circulators bear significance personal responsibility to prevent irregularities in the initiative process."[8]

Accordingly, the affidavit ensures, in part, that they fulfill these duties. For this reason, honesty in filling out the circulator affidavit plays a critical role.

The third interest is a valid concern about the uncertainty and difficulty in campaigning for office caused by the Lamborn's delay in bringing this case. The Proposed Intervenors will argue that Lamborn and other Plaintiffs have unduly delayed bringing this action, particularly in light of the Colorado Supreme Court's extremely clear – and recent – guidance in how to timely bring both state election law claims and federal constitutional claims when an election is pending. For purposes of this motion, however, the Proposed Intervenors are solely identifying their interest.

By delaying this matter, Lamborn has injected uncertainty and delay into the entire primary election process. This impairs not only Hill's efforts, but it creates confusion among Republican primary voters. To compound this problem, Lamborn seeks to have his name placed on the ballot pending the outcome of this case. Candidate Owen Hill, in particular, has a strong interest in avoiding voter confusion, knowing who the other contestants are,

---

[7] *Committee for Better Health Care for All Colorado Citizens v. Meyer*, 830 P.2d 884, 897 (1992).

[8] *Loonan v. Woodley*, 882, 1380, 1384 (Colo. 1994)

8

and how he must communicate to voters in this competitive environment. Lamborn's delay - - and especially any effort to keep his name on the ballot pending this Court case – causes confusion and difficulty for Hill and Republican primary voters.

### 3.    The Proposed Intervenors' interests may be impaired or impeded.

The "impairment or impediment" of an interest need not be of "a strictly legal nature" but rather may be "any significant legal effect in the applicant's interest."[9] The Proposed Intervenors comfortably meet this test.

First, Lamborn's use of circulators who are not registered Colorado Republicans dilutes the ability of Republicans to nominate for the primary ballot those candidates who truly represent the choices of Colorado's Republicans. It is well-established that "the right to associate with the political party of one's choice is an integral part of this basic constitutional freedom."[10] Thus, when it comes to nominating candidates, a state may not "limit[] the Party's associational opportunities at the crucial juncture at which the appeal to common principles may be translated into concerted action, and hence to political power in the community."[11] As the Supreme Court has made clear, "[a]ny interference with the freedom of a party is simultaneously an interference with the freedom of its adherents."[12] Lamborn seeks to allow non-Republicans participate in the party nominating process, and this impairs

---

[9] *Coalition of Ariz./N.M. Counties for Stable Economic Growth v. Dep't of Interior*, 100 F.3d at 844.

[10] *Kusper v. Pontikes*, 414 U.S. 51, 57, 94 S.Ct. 303, 307, 38 L.Ed.2d 260 (1973).

[11] *Tashjian v. Republican Party of Connecticut,* 479 U.S. 208, 215 (1986).

[12] *Democratic Party of U. S. v. Wisconsin ex rel. La Follette*, 450 U.S. 107, 122 (1986).

9

the Proposed Intervenors' interest in the nominating process.

This impairment is particularly acute because recently Colorado agreed to allow unaffiliated voters the opportunity to vote in Republican Primaries. Accordingly, Republican Party members have only the nominating process – either through assembly or petition – to ensure that party members can nominate candidates that represent Republican viewpoints, rather than viewpoints that have been diluted by the recruitment efforts and communications of non-party members. The Republican Party is, of course, open to all voting-age citizens who wish to affiliate with the party and participate in its internal activities, such as nominations to the primary ballot. But the party nominating processes should be limited to those who publicly commit to party affiliation, not diluted by those unwilling to participate as Republicans.

Second, the Proposed Intervenors will be harmed if circulators who misrepresent themselves are allowed to undermine the integrity of the party nominating process. In particular, Hill has sought nomination by following all the Republican Party rules, and he should not be penalized by having an opponent who used circulators that misrepresented themselves about their residency and party affiliation. Likewise, the Kuhn Intervenors brought an action in Denver District Court to enforce the petition requirements, and an order from this Court placing Lamborn on the ballot will certainly impair their particular efforts to enforce all aspects of Colorado's candidate petition requirements, not merely Colorado's residency requirements.

Third, the confusion caused by an order from this Court placing Lamborn's name on the ballot at this late date will cause substantial confusion among voters. County election

officials must send ballots to military and overseas voters by May 12, 2018, a mere 14 days

from now. And county officials will begin sending mail ballots to all voters on June 4, 2018,

22 days before the June election on June 24, 2018. This is 39 days from now, an extremely

short amount of time. It will create difficulty and confusion, impairing Hill's interests and

impairing the other intervenor's interests.

### 4.     The Proposed Intervenors are not adequately represented, because their interests diverge from the Secretary's.

In this case, the Secretary of State and the Proposed Intervenors share different

objectives, and accordingly the Secretary cannot adequately represent the Intervenors. It is

well established that a public entity cannot adequately represent both public interests and

private interests simultaneously:

> The government's representation of the public interest generally cannot be
> assumed to be identical to the individual parochial interest of a particular
> member of the public merely because both entities occupy the same posture in
> the litigation. In litigating on behalf of the general public, the government is
> obligated to consider a broad spectrum of views, many of which may conflict
> with the particular interest of the would-be intervenor. Even the government
> cannot always adequately represent conflicting interests at the same time. This
> potential conflict exists even when the government is called upon to defend
> against a claim which the would-be intervenor also wishes to contest.[13]

"[T]he burden to satisfy this condition is 'minimal,' and that '[t]he possibility of divergence

of interest need not be great in order to satisfy the burden of the applicants.'"[14]          Here,

there are several ways in which the Secretary does not adequately represent the Proposed

---

[13] *Western Energy Alliance v. Zinke*, 877 F.3d 1157 (10th Cir. 2017) (quoting *Utah Ass'n of Counties v. Clinton*, 255 F.3d 1246, 1255-56 (10th Cir. 2001).

[14] *WildEarth Guardians v. United States Forest Serv.*, 573 F.3d 992, 996 (10th Cir. 2009) (quoting *Coalition of Arizona/New Mexico Counties for Stable Economic Growth v. Department of Interior,* 100 F.3d 837, 844–45 (10th Cir. 1996)).

Intervenors' interests.

The Secretary's objective is to defend the constitutionality of Colorado law in its entirety. But the Proposed Intervenors are instead focused on two provisions that this Court can enforce, even if it strikes down Colorado's residency requirement. First, all Proposed Intervenors strongly assert that this Court cannot order Lamborn on the ballot -- regardless of the constitutionality of Colorado's residency requirements – because non-resident circulators violated Colorado petition laws when they misrepresented their residency on their petition affidavit.

The Proposed Intervenors are prepared to present evidence demonstrating why circulator honesty is necessary, and how circulator misrepresentation corrupts the candidate nominating process. Thus, even if this Court strikes down Colorado's residency requirement, the Proposed Intervenors strongly contend that Lamborn did not obtain adequate signatures and cannot be placed on the ballot. In this manner, they have fundamentally different interests than the Secretary.

Furthermore, the Secretary opposed the Kuhn Intervenors when they made these arguments in the state court that struck several circulators. For example, the Secretary asserted that the Kuhn Intervenors "do not complain about the circulators' compliance with affidavit requirements,"[15] when in fact they did. Accordingly the Secretary may be barred from asserting otherwise, thus requiring intervention.

Second, the Proposed Intervenors are particularly focused on validating the

---

[15] *Secretary's Response to § 113 Petition*, Case No. 2018CV31151 p. 3, Denv. Dist. Ct. (April 9, 2018).

associational rights of the Republican Party. This interest, while connected to Colorado's residency requirements, requires different analysis and evidence. In the candidate petition context, courts have treated the party affiliation requirement differently than residency requirements.[16] Proposed Intervenors' focus on the party affiliation requirements, which differs from a full defense of all of Colorado's requirements.

Third, the Secretary has defended the constitutionality of Colorado's residency requirement as satisfying strict scrutiny. The Proposed Intervenors will argue (and present evidence) that the residency and party affiliation requirements present minimal burdens to circulators from out of state, as well as to candidates seeking to collect petition signatures. Accordingly, Proposed Intervenors will argue that strict scrutiny is not the correct standard to apply. The Secretary will not present this position to the Court.

Finally, the Proposed Intervenors wish to introduce evidence beyond what the Secretary anticipates. For example, Mr. Baldini will testify to his personal experiences about being misled by a non-resident circulator who also falsely claimed residency on his petition circulator affidavit. And the Proposed Intervenors will present evidence about the importance of maintaining party cohesion to nominate candidates that represent Republican views in the nominating process. This includes testimony from some of the Proposed Intervenors themselves. And the Proposed Intervenors will present evidence that Colorado's requirements present a minimal burden.

---

[16] *Compare Maslow v. Board of Elections in the City of New York,* 658 F.3d 291 (2d Cir. 2011) (analyzing affiliation requirement for circulators); *with Initiative & Referendum Institute v. Jaeger,* 241 F.3d 614, 616–17 (8th Cir. 2001) (analyzing residency requirement for circulators).

13

## 5.      The intervention will not prejudice any party.

Intervention presents no prejudice to the Plaintiffs in this case, as confirmed by the Plaintiffs' position of not opposing the intervention. The potential that longstanding portions of Colorado's candidate petition process are declared unconstitutional will impact many individuals beyond the Plaintiffs and it is appropriate to have additional parties with particularized and unique interest in the outcome of this case adequately represented in the process.

Second, Proposed Intervenors are prepared to participate in the hearing scheduled for 9:00 a.m. Monday morning, April 29, 2018. Five of the proposed intervenors have the same legal representation as the state court proceeding that gave rise to this litigation. The parties and counsel are uniquely familiar with the legal and factual issues in the case and have a proven ability to assist courts with the consideration of these important issues.

The Secretary will not be prejudiced. The Secretary will defend the constitutionality of Colorado law in this proceeding and therefore will not be prejudiced by the Intervenor's role of assisting and bolstering the defense of Colorado law, both through different legal argumentation and through the bringing of evidence related to the constitutional issues. That evidence is beyond the control or ability of the Secretary to bring to a hearing in compressed timeframe of this litigation.

The timeliness of the intervention strongly mitigates against any prejudice to the parties. In instances where courts deny intervention, they often look to a lack of timeliness that causes prejudice and weighs against intervention.[17] Here, counsel conferred with both

---

[17] *See, e.g., Okla. ex rel. Edmondson v. Tyson Foods, Inc.*, 619 F.3d 1223, 1235 (10th Cir.

14

the Plaintiffs and Defendant about the proposed intervention before the case was even filed, and the Proposed Intervenors have asked for leave to intervene less than a day after the case was filed. This is not the case where proposed intervenors are coming to the proceeding late or present legal argument to evidence that is not directly related to the core questions presented for resolution.

**B.**      **Alternatively, this Court should permit intervention because the Proposed Intervenors assert defenses that have common facts.**

In the alternative, if the Intervenors are not granted intervention as a matter of right, they satisfy the permissive intervention standards under C.R.C.P. 24(b), and their participation will ensure the Court is fully and fairly apprised of the legal and factual material needed to decide a weight matter of public importance in Colorado. A decision to declare legislation unconstitutional is "the gravest and most delicate duty that this Court is called on to perform." [18] Likewise, "A federal court's decision to declare a state legislative act unconstitutional on its face is most invasive of state sovereignty. Because such a decision extends far beyond the immediate parties, a federal court, in my opinion, should reach such a decision only after the utmost consideration."[19]

The intervention is timely, will substantially benefit the Court's measured consideration of the claims, and will serve the purpose of assisting the court in making a decision about the constitutionality of Colorado laws that play a key role in the political

---

2010).

[18] *Blodgett v. Holden*, 275 U.S. 142, 148 (1927) (Holmes, J., concurring).

[19] *Planned Parenthood of the Rocky Mts. Servs. Corp. v. Owens*, 287 F.3d 910, 934 (10th Cir. 2002) (Baldock, J., dissenting).

process. Indeed, the incredibly compressed timeframe demanded by the plaintiffs makes intervention even more necessary, to ensure this court fully consider the issues presented in this case.

The considerations for permissive intervention include the timeliness of the intervention (satisfied in this case), the commonality of questions of law and fact between the claims in the case and the claims of the intervenor applicants, and the lack of undue delay or prejudice in the adjudication of the claims. See. C.R.C.P. 24(b). For the same reasons set forth above, the applications satisfy the lack of prejudice and timeliness factors for permissive intervention. And Proposed Intervenors' interests -- defending Colorado's laws from constitutional attack, the unique interest underlying state court adjudication of ballot access for the Fifth Congressional District primary election, and the impact on future candidate nominations -- all weigh strongly in favor of permissive intervention.

Respectfully submitted this 26th day of April 2018,

| KLENDA GESSLER & BLUE, LLC | STATECRAFT PLLC |
|---|---|
| *s/ Scott E. Gessler* | *s/ Michael Francisco* |
| Scott E. Gessler (28944) | Michael Francisco, #39111 |
| sgessler@klendagesslerblue.com | Statecraft PLLC |
| Geoffrey N. Blue (32684) | 620 North Tejon Street, Suite 101 |
| gblue@klendagesslerblue.com | Colorado Springs, CO  80903 |
| 1624 Market St., Ste. 202 | 719.399.0890 \| michael@statecraftlaw.com |
| Denver, CO  80202 | |
| Phone:  (720) 432-5705 | |

**CERTIFICATE OF SERVICE**

I hereby certify that on April 26, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following persons:


LeeAnn Morrill
First Assistant Attorney General
Matthew D. Grove
Public Officials Unit
State Services Section
1300 Broadway, 6th Floor
Denver, CO  80203

Ryan Call
Richard A. Westfall
Peter J. Krumholz
Hale Westfall, LLP
1600 Stout Street, Ste. 500
Denver, CO  80202


_s/ Joanna Bila_
Joanna Bila, Paralegal