IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-00980-PAB-KMT

MELISSA RENEE GOODALL, JEREMY WAYDE GOODALL, SHAUNA LEIGH
ARRINGTON, JEFFERY PHILLIP ARRINGTON, KARLA JO KROEKER, RYAN
MARK TIPPLE, REP. DOUGLAS LAMBORN, and LAMBORN FOR CONGRESS

      Plaintiff,

v.

WAYNE W. WILLIAMS, in his official capacity as Colorado Secretary of State,

      Defendants.

---

### DEFENDANT'S RESPONSE TO MOTION FOR PRELIMINARY INJUNCTION

---

      Defendant Wayne Williams, in his official capacity as Colorado Secretary of State ("the Secretary"), by and through the Colorado Attorney General's Office and undersigned counsel, responds as follows to Plaintiffs' motion for a preliminary injunction [Doc. 2].

## INTRODUCTION

      Less than 48 hours before the Secretary's statutory deadline to certify candidates for the primary ballot, and after being ordered off the ballot by the Colorado Supreme Court, Rep. Doug Lamborn, along with several supporters, filed suit challenging the constitutionality of a law that has been on the books in Colorado since 1980.  Plaintiffs seek a mandatory preliminary injunction that would require the Secretary to "certif[y] Mr. Lamborn to the 2018 Republican Primary ballot for" Colorado's Fifth Congressional District.  Due to Plaintiffs' unreasonable

1

delay and the resulting prejudice to the Secretary, laches bars the extraordinary remedy Plaintiffs seek.  Alternatively, Plaintiffs fail to satisfy the standards for obtaining a preliminary injunction, as they are unable to show a likelihood of success on the merits, that they face irreparable harm that could be remedied by the issuance of an injunction, that the balance of harms tips in their favor, or that issuing a preliminary injunction would be in the public interest.

## STATEMENT OF THE CASE AND FACTS

### *Requirements for nominations of candidates by petition*

Under Colorado law, candidates for statewide office seeking the nomination of their political party may access the primary ballot through three routes: state assembly, write-in, or nominating petition. In advance of the June 26, 2018 primary election, Plaintiff U.S. Representative Douglas Lamborn ("Rep. Lamborn"), a candidate for a seat in the United States House of Representatives, sought access to the primary ballot through the nominating petition route. *See* Doc. 1, Compl. ¶¶ 47-49.  Pursuant to the nominating petition requirements, as relevant here, Lamborn was required to obtain signatures of 1,000 eligible electors residing in Colorado's Fifth Congressional District ("CD5") and affiliated with the Republican Party. *See* § 1-4-801(6), C.R.S. (2017).  There are more than 207,000 registered Republicans in CD5.  Rep. Lamborn could have met the 1,000 signature requirement by collecting less than 16 signatures per day during the 63-day petitioning window. *See* § 1-4-801(5), C.R.S. (2017).

Colorado law has long required that persons who circulate nominating petitions be "a resident of the state, a citizen of the United States, at least eighteen years of age, and, for partisan candidates, registered to vote and affiliated with the political party mentioned in the petition at the time the petition is circulated, as shown in the statewide voter registration system." § 1-4-905(1), C.R.S.  Consistent with that requirement, circulators must attach a "signed, notarized, and dated affidavit" to each petition section that they submit that includes, among other things, their name and address, as well as an affirmation that they met the residency, age, and citizenship requirements "at the time the section of the petition was circulated and signed by the listed electors." § 1-4-905(2).

The Secretary of State is Colorado's chief elections officer, and is responsible for oversight of the petitioning process for statewide and federal offices.  §§ 1-1-107(1)(a-b) and 1-1.5-101(1)(h), C.R.S.  The Secretary reviews and approves petition formats, § 1-4-903, examines circulator affidavits and informs the candidate of errors and insufficiencies, § 1-4-912, verifies and counts valid signatures on submitted petition sections, §§ 1-4-905 and -908, and issues statements of sufficiency or insufficiency once the review is complete. § 1-4-908(3).

*The Kuhn Petitioners' challenge to the Secretary's statement of sufficiency*

After completing review of the Lamborn nominating petition, the Secretary determined that Lamborn had submitted 1,269 valid signatures.  On March 29, 2018, the Secretary issued a statement of sufficiency pursuant to 1-4-908(3).  A group of five electors residing within CD5 ("Kuhn Petitioners") then filed a petition

in the Denver District Court pursuant to § 1-4-909(1) and § 1-1-113(1), challenging

the Secretary's finding of sufficiency, in an action captioned *Kuhn v. Williams*,

Denver District Court No. 2018CV031151.  The basis for the Kuhn Petitioners'

challenge was their allegation that several of the circulators who gathered

signatures in support of Rep. Lamborn's candidacy—including one of the Plaintiffs

here, Ryan Tipple—were not bona fide residents of the State of Colorado, and thus

were not properly registered as Republicans in the statewide voter registration

database.

The Lamborn campaign intervened[1] as a co-respondent with the Secretary

and the parties filed merits briefs shortly before the district court held a half-day

evidentiary hearing.  At the close of the evidentiary hearing, the district court

announced its findings of fact and conclusions of law from the bench.  The district

court found that the process that the Secretary followed for review, verification, and

acceptance of submitted petition sections, including the circulator affidavits,

"complied technically with the rules," and that as a consequence there was "no error

on the part of the Secretary of State." Doc. 1, Ex. 2, R.Tr. 193:17-22.  In the

alternative, the district court made factual findings with respect to the residency

and registration of the seven circulators whose petition sections Petitioners had

challenged and urged the court to invalidate.  Applying a preponderance of the

---

[1] Because his petition drive had used some of the same circulators as the Lamborn campaign, gubernatorial candidate Walker Stapleton also moved to intervene and filed a motion to dismiss, but he withdrew his motion just before the evidentiary hearing began.  Later that day Stapleton announced that he was withdrawing his petitions (which the Secretary had already declared sufficient) and instead seeking nomination for the Republican primary through the state party assembly.

evidence standard, the district court found that Petitioners had proven that one of these circulators (Jeffrey Carter) was not a resident of Colorado at the time that he gathered signatures on behalf of the Lamborn campaign.  With respect to the remaining six circulators, including Tipple, however, the district court found that the Plaintiffs had not carried their burden of disproving residency.  Because the disqualified circulator had gathered fewer than 259 signatures, elimination of those petition sections did not render Lamborn ineligible for ballot certification.  The district court accordingly denied Petitioners' request for relief, and affirmed the Secretary's decision to issue a statement of sufficiency.

On April 13, 2018, the Kuhn Petitioners appealed to the Colorado Supreme Court pursuant to appellate procedure proscribed by 1-1-113, C.R.S. challenging the district court's finding that one particular circulator, Tipple, was a resident. On April 23, 2018, the Colorado Supreme Court held that although the Secretary acted properly, based on the information in the voter registration system, in issuing a statement of sufficiency to Lamborn, the Kuhn Petitioners nonetheless had the statutory right to challenge the validity of the petition under sections 1-4-909 and 1-1-113, C.R.S. (2017), before the Secretary certified Representative Lamborn's name to the ballot. *Kuhn v. Williams*, No. 18SA176, 2018 CO 30, ¶¶ 30–35, 40 (Co. Apr. 23, 2018).  The Colorado Supreme Court then overturned the district court's residency finding as to Tipple and held Tipple was not a resident of Colorado when he served as a circulator for the Lamborn Campaign. *Id*. at ¶¶ 52–54, 57. The court further held that

> Because Tipple was statutorily ineligible to serve as a circulator, the signatures he collected are invalid and may not be considered. That causes the Lamborn Campaign's number of signatures to fall short of the 1000 required to be on the Republican primary ballot. Therefore, the Secretary may not certify Representative Lamborn to the 2018 primary ballot for CD5. We recognize the gravity of this conclusion, but Colorado law does not permit us to conclude otherwise.

*Id.* at ¶ 57.

The court did not address the Lamborn Campaign's arguments regarding the constitutionality of the circulator residency requirement in section 1-4-905(1), because the court held it lacked jurisdiction to address such claims in a proceeding under section 1-1-113. *Id.* at ¶¶ 55, 58, *see also Williams v. Libertarian Party of Colo.,* 401 P.3d 558 (Colo. 2017), *cert. den.* __S.Ct. ___, 2018 WL 1051877 (April 16, 2018).

## ARGUMENT

### I.   Plaintiffs' claims are barred by the doctrine of laches.

The Court need not decide Plaintiffs' preliminary injunction motion because Plaintiffs' claims are precluded by the equitable doctrine of laches. "The laches defense bars a party's dilatory claim." *Biodiversity Conservation All. v. Jiron*, 762 F.3d 1036, 1090 (10th Cir. 2014) (citations omitted). "It stems from the principle that 'equity aids the vigilant and not those who slumber on their rights.'" *Id.* at 1090–91 (quoting *Kansas v. Colorado,* 514 U.S. 673, 687 (1995)). Laches bars a claim when there is: "(1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense." *Id.* at 1091 (quoting *Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101 at 121–22 (2002)).

Under similar circumstances, a number of different courts have held that laches bars candidates seeking nomination for office from raising last minute challenges to the constitutionality of circulator residency requirements. In *Perry v. Judd*, 471 F.App'x 219, (4th Cir. 2012), for example, the Fourth Circuit considered an late-filed challenge to a law providing that "Virginia residents can serve as petition circulators for the purposes of a Virginia primary election campaign." 471 F.App'x 219, 221 (4th Cir. 2012). As Rep. Lamborn does here, the candidate in *Perry* requested an order placing him on the primary ballot court. The Fourth Circuit rejected the challenge, holding that "[m]ovant's request contravenes repeated Supreme Court admonitions that federal judicial bodies not upend the orderly progression of state electoral processes at the eleventh hour." *Id.* at 220. Noting that "[t]he requirements have been on the books for years," the court expressed concern that "[i]f we were to grant the requested relief, we would encourage candidates for [office] who knew the requirements and railed to satisfy them to seek at a tardy and belated hour to change the rules of the game." *Id.* at 220. "This would not be fair to the states or to other candidates who did comply with the prescribed processes in a timely manner and it would throw the … nominating process into added turmoil." *Id.*

Nor is the Fourth Circuit alone. Other courts have also invoked the equitable doctrine of laches in order to prevent an eleventh-hour challenge from upending nominating processes that have long been settled under state law. For example, in *Merced v. Spano*, No. 16CV3054, 2016 WL 3906646 (E.D.N.Y. July 14, 2016), the

plaintiff sought to have the candidate's "name submitted to the ballot on an independent petition without having a registered New York voter witness each page, claiming that the voter registration requirement will cause them irreparable harm in the upcoming Senate race." *Id.* at *1. The court found that the plaintiff was likely to succeed on the merits of his claim, but nonetheless concluded that his request for a preliminary injunction was barred by laches. Noting that "with the exception of 1986, the Party has collected signatures and submitted petitions pursuant to Section 6-140 every two years since 1974," the Court found inexcusable the plaintiff's decision to file his motion just "a week before 2016's brief, six-week petitioning period began." *Id.* at *2. "A preliminary injunction," the court stated, "is an extraordinary remedy, but the courthouse is not an emergency room— certainly not for such a contrived crisis." *Id., see also Fulani v. Hogsett*, 917 F.2d 1028, 1031 (7th Cir. 1990) (laches barred candidate's claim challenging ballot certification where candidate waited eleven weeks to file suit as election approached); *Kay v. Austin*, 621 F.2d 809, 813 (6th Cir. 1980) (laches applied where candidate waited two weeks after he knew he would not be listed on ballot to file suit and preliminary work had already been done for election).

### 1. *Plaintiffs have not been diligent*

Here, the first element of laches has been met. Plaintiffs have exhibited an astonishing lack of diligence by waiting almost until the eve of the Secretary's deadline to certify candidates for the primary ballot to challenge a law that has been on the books for decades. 1980 Colo. Sess. Law, pp. 328–29. And their

decision to mount their challenge only *after* the Colorado Supreme Court has already made its state-law determination only exacerbates the delay, and the complications that would flow from the issuance of an injunction at this late date. Plaintiffs' delay was not the result of a lack of notice or confusion about what Colorado's law require.  The state's Election Code provides in no uncertain terms that circulators of nominating petitions must be residents and registered voters.  § 1-4-905(1), C.R.S.  As a six-term Congressman, neither Lamborn nor his campaign committee can claim unfamiliarity with the state's nominating processes.  Nothing prevented Plaintiffs from filing their complaint and seeking injunctive relief years ago, or even after the Kuhn Petitioners first raised challenges to Lamborn's sufficiency statement and Tipple's residency.  As the Fourth Circuit reasoned in *Perry*, if the court were to find Plaintiffs' delay excusable, it "would encourage candidates to wait until the last minute to bring constitutional challenges to state election laws. . . and we are loath to reach a result that would only precipitate a more disorderly . . . nominating process."  *Id*. at 225.

2.  *The Secretary has been prejudiced*

The second prong of the laches defense is also satisfied, as the Secretary has been prejudiced by this constitutional challenge filed less than two days before the primary ballot certification deadline.  Colorado law requires that the Secretary certify the primary ballot's content "no later than sixty days before any primary election[.]" § 1-5-203(1)(a), C.R.S.  There are no statutory exceptions, although the Denver District Court did extend the deadline until Wednesday, May 2, 2018, over

the Secretary's objection.[2]  The statutory deadline of April 27, 2018, has been

publicly accessible on the Secretary's online election calendar for months,[3] and is

fixed to ensure compliance with the federal and state law requirement that

absentee ballots be transmitted to overseas military personnel no later than 45 days

before the election, to allow adequate time for their receipt and return from

overseas. *See* § 1-8.3-110(1), C.R.S.; 52 U.S.C. § 20302(a)(8)(A). The brief period

between ballot certification and transmission of the overseas ballots is essential to

permit the Secretary, the county clerks and recorders, and their vendors enough

time to finalize the ballot formats, to print the hard copy ballots, and to transmit

them.

      "Ballots and elections do not magically materialize.  They require planning,

preparation, and studious attention to detail if the fairness and integrity of the

electoral process is to be observed."  *Perry*, 471 Fed. App'x at 226.  Even in a

primary election, there are hundreds of different ballot styles and formats that

must be prepared by election officials before they can be printed and transmitted to

voters.[4]

---

[2] The Denver District Court did not take evidence or make findings to support its decision to stay the deadline.

[3] https://www.sos.state.co.us/pubs/elections/main.html?menuheaders=5

[4] In Denver alone, there are approximately 28 state house seats and 16 state senate seats with non-overlapping district borders, resulting in a welter of different ballot formats. Although not each of these seats is up for election this year, the web of different ballot formats expands further once other county and federal races are added to the mix, including congress, county commissioner, clerk, treasurer, coroner, assessor, and others.  It is not uncommon for a voter to have an entirely different ballot format from his neighbor across the street.

The Secretary should not be required to either delay the ballot-certification deadline or mount a defense of a well-known state laws on mere days' notice. Nor should this Court be required to evaluate the merits of Plaintiffs' complex constitutional claims on an expedited basis. That is no way to adjudicate the constitutionality of state election laws. "Poor planning on [Plaintiffs'] part does not translate into a crisis for everyone else." *Garcia v. Estate of Arribas*, No. 04-1159-MLB, 2006 WL 5249748, *5 (D. Kan. Mar. 31, 2006). Accordingly, because the elements of laches are satisfied, this Court should deny Plaintiffs' request for a preliminary injunction.

## II.  Plaintiffs are not entitled to a preliminary injunction

### A. Preliminary injunction standard

Because "a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal." *Schrier v. Univ. Of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005) (quotation omitted). Plaintiffs must establish (1) a substantial likelihood of success on the merits, (2) that they will suffer irreparable injury if the preliminary injunction is denied, (3) that the threatened injury to Plaintiffs outweighs the injury caused by the injunction, and (4) that an injunction is not adverse to the public interest. *Schrier*, 427 F.3d at 1258. The plaintiff bears the burden of proof to demonstrate that each factor tips in his or her favor. *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1188–89 (10th Cir. 2003).

Where, as here, the requested injunction falls into each of three specifically disfavored categories—preliminary injunctions that alter the status quo, mandatory

preliminary injunctions, and preliminary injunctions that afford the movant all the relief that it could recover at the conclusion of a full trial on the merits—the motion "must be more closely scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course." *Schrier*, 427 F.3d at 1259 (quotations omitted).  Plaintiffs are required to make "to make a heightened showing of the four factors," *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1208–09 (10th Cir. 2009), and demonstrate that "on balance, the four [preliminary injunction] factors weigh heavily and compellingly in his favor," *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 977 (10th Cir. 2004).

**1. Plaintiffs cannot show a substantial likelihood of success on the merits.**

Plaintiffs' motion for a preliminary injunction should be denied because they do not have a substantial likelihood of success on the merits.  Colorado has a compelling governmental interest in policing the integrity of its nominating petition process and limiting self-governance to its own political community.  Prohibiting circulators who are not residents and registered Colorado voters from circulating petitions for candidates for elected office is consonant with, and narrowly tailored to serve, that goal.

**a. To the extent Plaintiffs demonstrate that strict scrutiny applies, Colorado's residency and registration requirements satisfy that standard.**

Plaintiffs assert that Colorado's residency and registration requirements are unconstitutional and unenforceable. The Court should reject this argument.

Courts apply either a balancing test or strict scrutiny to analysis of election-related legislation. *Chandler v. City of Arvada, Colorado*, 292 F.3d 1236, 1241–42 (10th Cir. 2002). "Strict scrutiny is applicable 'where the government restricts the overall quantum of speech available to the election or voting process.... [It] is employed where the quantum of speech is limited due to restrictions on ... the available pool of circulators or other supporters of a candidate or initiative, as in *ACLF* and *Meyer.*" *Id*. at 1241–42 (quoting *Campbell v. Buckley,* 203 F.3d 738, 745 (10th Cir. 2000)). To prove that strict scrutiny applies, Plaintiffs bear the burden of demonstrating the law imposes a severe burden on speech. *See Ind. Inst. v. Gessler*, 869 F.Supp.2d 1289, 1299 (D. Colo. 2012) ("An election law will face strict scrutiny where…*the evidence shows* that it severely burdens speech") (emphasis added). Here, however, Plaintiffs cannot establish that the residency requirement imposes a severe burden on Rep. Lamborn's ballot access rights. Under § 1-4-801(2)(b), Rep. Lamborn had 63 days to gather 1,000 signatures from CD5, a district with more than 207,000 registered Republicans. Rep. Lamborn would have had to gather fewer than 16 signatures per day to meet this requirement. And with more than 1,000,000 registered Republicans in Colorado, the available pool of circulators is more than sufficient to collect the small number of signatures required. In light of the reasonable threshold set by the law, the burden imposed by a residency requirement for circulators is minimal, and cannot be described as severe.

Even if strict scrutiny applies, the "inquiry, however, does not end here." *Chandler*, 292 F.3d at 1241. A statute that is narrowly tailored to serve a

compelling interest will survive a First Amendment challenge even though it substantially burdens "core political speech." *Id.* at 1241.  Under these standards, Colorado's residency and registration requirements comply with the First Amendment.

Moreover, state statutes are presumed to be constitutional.  *Eaton v. Jarvis Products Corp.,* 965 F.2d 922, 929 (10th Cir. 1992).  Plaintiffs cannot meet their burden of showing otherwise.  Neither the Supreme Court nor the Tenth Circuit has held that residency or voter registration requirements for circulators of nominating petitions is unconstitutional.  In fact, just over a month ago, the Tenth Circuit issued a comprehensive decision upholding Utah's 2014 election laws providing candidates a signature-gathering path to the primary election ballot.  *Utah Republican Party v. Cox*, 885 F.3d 1219, 1224 (10th Cir. 2018).  Although the court's decision did not address the issue, that law includes a requirement that nominating petition circulators be Utah residents.  *See* Utah Code Ann. § 20A-9-405(4).

**b.  There are compelling government interests at stake.**

States have the right to regulate their elections "if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic process." *Buckley v. American Constitutional Law Found.,* 525 U.S. 182, 187 (1999) ("*ACLF*") (quoting *Storer v. Brown*, 415 U.S. 724, 730 (1974)).

Colorado and its political subdivisions have "a compelling interest in policing the integrity of its petition process." *Chandler*, 292 F.3d at 1241.  The U.S. Supreme Court has recognized as valid interests "administrative efficiency, fraud

14

detection, [and] informing voters" in the electoral context. *ACLF*, 525 U.S. at 192.

Because states "have considerable leeway to protect the integrity and reliability of

… election processes generally," *id.* at 191 (citations omitted), Colorado has a

compelling interest in requiring circulators to be both residents and registered

voters. *Cf. Yes On Term Limits, Inc. v. Savage*, 550 F.3d 1023, 1029 (10th Cir. 2008)

(assuming *arguendo* that Oklahoma has a compelling interest "in protecting and

policing both the integrity and the reliability of its initiative process.").

### c.  Colorado law is narrowly tailored to serve those interests.

Colorado's residency and registration requirements are narrowly tailored to

serve these compelling governmental interests.  While certain state statutes

imposing residency or registration requirements on circulators have been struck

down, those cases are distinguishable.

Colorado's particular residency and registration requirements facilitate the

swift adjudication of pre-election legal challenges.  In enacting § 1-1-113 and

allowing petitioners to bring short-fuse election claims, the General Assembly had

to balance the due process rights of litigants with the state's interest in promptly

resolving disputes so that it can hold elections in a timely and orderly manner.

Under state law, a petitioner has only five days to bring a challenge to the

Secretary's determination of insufficiency, § 1-4-909(1.5), and in this case, final

judgment will be rendered within a few days of the date on which the petition was

filed.  To ensure district courts can hear the evidence necessary to resolve these

disputes, it is essential that circulators be immediately accessible to both the

litigants and the court.  The residency and registration requirements ensure the availability of those witnesses by limiting the universe of potential circulators to those who not only reside in the state, but have also registered to vote and thereby provided the state with a valid physical address or location at which they can be found.  Without these requirements, interested parties and Colorado's state district courts will be deprived of the evidence they need to fairly adjudicate election disputes involving a circulator's alleged acts or omissions.  *See* Exhibit A (Denver District Court order recounting circulator testimony that was necessary to rehabilitate affidavit errors).

This reasoning is in line with decisions that have upheld residency requirements in related contexts.  In *Initiative & Referendum Institute v. Jaeger*, the Eighth Circuit "conclude[d] that the [state's] residency requirement is constitutional" after it agreed with North Dakota's contention "that by having circulators available to answer questions regarding fraud and abuse, it will be able to police the petition process more easily."  241 F.3d 614, 616 (8th Cir. 2001).  Similarly, a federal district court held that Mississippi's "circulator residency requirement … is constitutional because it is narrowly tailored to the aim of preventing campaign fraud."  *Kean v. Clark*, 56 F. Supp. 2d 719, 733 (S.D. Miss. 1999).

The particular facts of this case stand in contrast to the opinions that have gone the other way.  The courts in *Chandler*, *ACLF,* and *Nader v. Brewer*, 531 F.3d 1028 (9th Cir. 2008), all based their decisions on the fact that the state could have

required prospective circulators "to agree to submit to the [relevant] jurisdiction …
for the purpose of subpoena enforcement" instead of banning nonresidents or
unregistered voters altogether.  *Chandler*, 292 F.3d at 1244; *see also ACLF*, 525
U.S. at 195 ("Colorado seeks to ensure that circulators will be amenable to the
Secretary of State's subpoena power, which in these matters does not extend beyond
the State's borders."); *Brewer*, 531 F.3d at 1037 ("The state contends that this
restriction is narrowly tailored to ensure that circulators are subject to the state's
subpoena power …").  But in this case, the issue is not whether the district courts
have subpoena powers over necessary witnesses; the concern is that, whether or not
a subpoena could validly be issued, there simply isn't enough time to subpoena a
witness and compel that person to travel to and attend a hearing.  Similarly, in *Yes
on Terms Limits, Inc.*, 550 F.3d 1023, and *Brewer* the appellate courts were
contending with a significantly longer timeline: plaintiffs in both cases had a ten-
day period to bring a challenge and, in *Brewer*, the litigation took place over a
period of years.  *Brewer*, 531 F.3d at 1032 (action brought in August 2004; summary
judgment motions filed in January 2006).[5]  Nor is the threat of short-fuse litigation
a remote or theoretical danger.  Section 113 actions are very common in Colorado;
the Secretary litigates them every election cycle.

---

[5] The defendant in *Brewer* also made no attempt whatsoever to prove that the
state's petition circulator requirements satisfied strict scrutiny.  *Id.* at 476 ("No case
has been put forward in this litigation as to a compelling state interest in
permitting unregistered Ohioans to circulate petitions but not unregistered citizens
of other states.").

The residency and registration requirements at issue in this case are also narrowly tailored because any other ostensibly lesser-restrictive means would have the potential to infringe on the constitutional rights of other participants in the political process.  The major political parties, speaking through the elected representatives who belong to those parties, have a First Amendment stake in "choos[ing] a candidate-selection process that will in [their] view produce the nominee who best represents its political platform." *N.Y. State Bd. of Elections v. Lopez Torres*, 552 U.S. 196, 203 (2008).  While "the State acquires a legitimate governmental interest in ensuring the fairness of the party's nominating process" in elections that it manages, major-party representatives have, in Colorado, historically been responsible for writing those laws.

In sum, no court has ever considered the significant restraints the State faces here.  Not only is there a real and immediate threat of continuing electoral disputes that are routinely resolved in the span of only a few hours or days, but Colorado must also take into consideration the due process rights of individual litigants and the free association interests of Colorado's political parties.  Given these exceptionally difficult circumstances, if it is ultimately necessary to reach the question, the Court should find that Colorado has narrowly tailored its residency and registration requirements to serve the State's compelling interests.

### 2. Plaintiffs will not suffer irreparable injury if the preliminary injunction is denied.

In order to prove irreparable harm, Plaintiffs must show that the injury is certain, great, and actual. *Heideman,* 348 P.3d at 1189. It is not sufficient to show

18

that the harm is only serious or substantial. Plaintiffs must show that the injury is so imminent that there is a clear and present need for equitable relief. *Id.*

Here, Plaintiffs argue they face several types of allegedly irreparable harm. Rep. Lamborn claims that, absent an injunction, he will be irreparably injured because he will "not be on the primary ballot and will lose his ability to seek reelection." Doc. 2 at 11. Plaintiffs who support Rep. Lamborn maintain that they will lose their opportunity to "vote for their chosen candidate" and will "have their First Amendment expressions of support for Congressman Lamborn's candidacy nullified." Doc. 2 at 11-12. And circulator Ryan Tipple argues that his "rights as a petition circulator will be severely impaired." *Id.* at 12.

Mr. Tipple's claim is easily dismissed. Because the period for nominating major-party candidates by petition is closed, issuing a preliminary injunction will not afford him—or any other non-resident circulators—any relief. With respect to those Plaintiffs who wish to vote for Rep. Lamborn, they may still have an opportunity to reelect their chosen candidate should he choose to mount a write-in campaign in the general election. Rep. Lamborn may avail himself of the same opportunity.

### 3. The threatened injury to Plaintiffs does not outweigh the injury an injunction would cause to the public.

In this case, the balance of harms and the public interest are closely interrelated, and so are best analyzed together. If Plaintiffs' motion is granted, the entire election administration process used by the Secretary to validate submitted signatures will be called into question—notwithstanding the fact that nearly 30

major-party candidates for state and federal office qualified for the ballot under the rules that Rep. Lamborn now argues should be invalidated. Other disqualified candidates may similarly seek court orders to place them on the primary ballot, despite their noncompliance with state law. Such candidates may seek to further delay the already-postponed ballot-certification deadline, further jeopardizing Colorado's ability to timely send ballots to overseas military personnel as required by federal and state law.

It is for reasons such as this that preliminary injunctions that alter the status quo are disfavored, and in the election context the Supreme Court has proven particularly reluctant to grant relief that would alter existing election laws or procedures just before an election. In *Purcell v. Gonzalez*, 549 U.S. 1 (2006), in what could be considered a variation on the laches argument outlined above, the Supreme Court counseled strongly against changing the applicable elections rules midstream to avoid precisely the type of confusion and uncertainty that the district court's order has the potential to create. "Confidence in the integrity of our electoral processes is essential to the functioning of our participatory democracy." *Id.* at 4. The imminence of the 2018 primary election is undeniable, and an injunction that strikes down core law governing the major parties' nominating petition process days before ballot certification can only result in chaos.

## CONCLUSION

The Court should deny Plaintiffs' motion for a preliminary injunction.

Respectfully submitted this 27th day of April, 2018.

CYNTHIA H. COFFMAN
Attorney General

/s/ *Emily B. Buckley*
LEEANN MORRILL*
First Assistant Attorney General
MATTHEW D. GROVE, *
Assistant Solicitor General
EMILY BUCKLEY*
Assistant Attorney General
Public Officials Unit
State Services Section
Attorneys for Colorado Secretary of State
*Counsel of Record

## CERTIFICATE OF SERVICE

I hereby certify that on April 27, 2018, I served a true and complete copy of the within **Defendant's Response to Motion for Preliminary Injunction** upon all parties through ECF or as indicated below:

Ryan R. Call
Richard A. Westfall
Peter J. Krumholz
Hale Westfall, LLP
1600 Stout Street, Ste. 500
Denver, CO 80202

Scott E. Gessler
Geoffrey N. Blue
1624 Market St., Ste. 202
Denver, CO 80202

Michael Francisco
Statecraft PLLC
620 North Tejon Street, Suite 101
Colorado Springs, CO 80903

*/s Emily B. Buckley*
Emily B. Buckley