IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 18-cv-00980-PAB

MELISSA RENEE GOODALL,
JEREMY WAYDE GOODALL,
SHAUNA LEIGH ARRINGTON,
JEFFERY PHILLIP ARRINGTON,
KARLA JO KROEKER,
RYAN MARK TIPPLE,
REP. DOUGLAS LAMBORN, and
LAMBORN FOR CONGRESS,

    Plaintiffs,

v.

WAYNE W. WILLIAMS, in his official capacity as Colorado Secretary of State,

    Defendant.

# ORDER

This matter is before the Court on the Partially-Unopposed Motion to Intervene [Docket No. 9] filed on April 26, 2018. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331.

## I. BACKGROUND[1]

In January 2018, U.S. Congressman Douglas Lamborn announced his intent to seek the Republican Party nomination in the primary election for Colorado's Fifth Congressional District, which is to be held on June 26, 2018. Docket No. 1 at 14, ¶ 47. Pursuant to Colo. Rev. Stat. § 1-4-801, which allows for designation of party candidates

---

[1] The following facts are drawn largely from plaintiffs' complaint. *See* Docket No. 1. The Court will assume that plaintiffs' allegations are true for purposes of this motion.

by petition, various volunteer and professional circulators circulated nominating petitions on Congressman Lamborn's behalf. *Id.* at 12, 14, ¶¶ 42, 48, 49. Under § 1-4-801(2)(b), Congressman Lamborn was required to obtain 1,000 verified signatures from registered Republicans in the Fifth Congressional District to gain access to the 2018 Republican primary election ballot.

On March 29, 2018, defendant Wayne Williams, the Secretary of State of Colorado ("the Secretary"), certified that Congressman Lamborn had obtained a total of 1,269 valid signatures. *Id.* at 14, ¶ 50. On April 3, 2018, five voters from Colorado's Fifth Congressional District filed a verified petition in the District Court for the City and County of Denver challenging the Secretary's determination as to the sufficiency of Congressman Lamborn's nominating petition. *Id.* at 15, ¶ 51. Specifically, the petitioners argued that several of Congressman Lamborn's circulators were not residents of Colorado, as required under Colo. Rev. Stat. § 1-4-905(1),[2] and thus the signatures collected by those circulators were invalid. *Id.* After an evidentiary hearing, the district court concluded that only one of Congressman Lamborn's circulators failed to meet the residency requirements under § 1-4-905(1). *Id.* at 15, ¶¶ 51-52; *see also Kuhn v. Williams*, No. 18SA176, at *9-10 (Colo. 2018) (slip op.). Because the signatures collected by the remaining circulators totaled 1,211, the court upheld the

---

[2]Colo. Rev. Stat. § 1-4-905(1) provides:

No person shall circulate a petition to nominate a candidate unless the person is a resident of the state, a citizen of the United States, at least eighteen years of age, and, for partisan candidates, registered to vote and affiliated with the political party mentioned in the petition at the time the petition is circulated, as shown in the statewide voter registration system.

Secretary's finding that Congressman Lamborn's nominating petition was sufficient to certify him to the primary ballot. *Id.* On appeal, the Colorado Supreme Court reversed. Docket No. 1 at 15, ¶ 53. In regard to one of the challenged circulators, the court determined that the district court had erred in finding that he was a Colorado resident. Specifically, the Colorado Supreme Court held that the district court "improperly focused on [Ryan] Tipple's stated future intent to move to Colorado" in determining whether he was a resident of Colorado under § 1-4-905(1). *See Kuhn*, No. 18SA176, at *5. The Colorado Supreme Court determined that Tipple did not satisfy § 1-4-905(1)'s residency requirement and thus the 269 signatures he collected on behalf of Congressman Lamborn were invalid. *See id.* at *4, *24. The court further determined that, because Congressman Lamborn's signatures now fell short of the 1,000 required to be on the Republican primary ballot, the Secretary could "not certify Representative Lamborn to the 2018 primary ballot for [the Fifth Congressional District.]" *Id.* at 25.

Plaintiffs – registered voters in Colorado's Fifth Congressional District, Ryan Tipple, Congressman Douglas Lamborn, and Lamborn for Congress – filed this lawsuit on April 25, 2018, challenging the constitutionality of the circulator residency requirement in Colo. Rev. Stat. § 1-4-905(1). Docket No. 1. Plaintiffs seek a court order declaring that the residency requirement is unconstitutional under the First Amendment of the U.S. Constitution. *Id.* at 20, ¶ 1. In addition, they request an injunction directing the Colorado Secretary of State to certify Congressman Lamborn to the 2018 Republican primary election ballot. *Id.*, ¶ 2. On April 25, 2018, plaintiffs moved for a preliminary injunction. Docket No. 2.

On April 26, 2018, a group of individuals consisting of the state-court petitioners, current and former legislators of the Colorado General Assembly, State Senator Owen Hill, a candidate for Colorado's Fifth Congressional District in the 2018 Republican Party primary, and Eric Baldini, an individual who alleges that he was misled into signing Congressman Lamborn's nominating petition (collectively "intervenors" or "proposed intervenors"), filed a motion to intervene in opposition to plaintiffs' request for a court order directing the Secretary to certify Congressman Lamborn to the 2018 Republican primary ballot. Docket No. 9. On April 27, 2018, defendant filed a response in opposition to the motion to intervene. Docket No. 13. Both defendant and the proposed intervenors have also filed responses opposing plaintiffs' request for a preliminary injunction. Docket Nos. 26, 27. The hearing on the motion for a preliminary injunction is set for Monday, April 30, 2018. Docket No. 7. The deadline for certification of candidates to the 2018 Republican primary ballot is May 3, 2018. Docket No. 13 at 6 n.1.[3]

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 24 governs the intervention of non-parties. Under Rule 24(a)(2), non-parties may intervene in a pending lawsuit as of right if: "(1) the application is timely; (2) the applicants claim an interest relating to the property or transaction which is the subject of the action; (3) the applicants' interest may as a practical matter be impaired or impeded; and (4) the applicants' interest is not adequately represented by existing parties." *Western Energy Alliance v. Zinke*, 877

---

[3]In defendant's response to the preliminary injunction motion, defendant states that the deadline is May 2, 2018. Docket No. 27 at 9.

4

F.3d 1157, 1164 (10th Cir. 2017) (brackets omitted).[4]  "Failure to satisfy even one of these requirements is sufficient to warrant denial of a motion to intervene as of right." *Maynard v. Colo. Supreme Court Office of Attorney Regulation Counsel*, No. 09-cv-02052-WYD-KMT, 2010 WL 2775569, at *3 (D. Colo. July 14, 2010) (quoting *Commodity Futures Trading Comm'n v. Heritage Capital Advisory Servs., Ltd.*, 736 F.2d 384, 386 (7th Cir. 1984)).

If a non-party is not entitled to intervention as of right, he or she may seek permissive intervention under Federal Rule of Civil Procedure 24(b).  Permissive intervention is allowed if (1) the motion to intervene is timely and (2) the non-party "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1).[5]  "The decision to grant or deny a motion for permissive intervention is wholly discretionary with the district court."  *Maynard*, 2010 WL 2775569, at *4 (quoting *South Dakota ex rel. Barnett v. U.S. Dep't of Interior*, 317 F.3d 783, 787 (8th Cir. 2003)).

## III. ANALYSIS[6]

The proposed intervenors assert that they are entitled to intervene in this action

---

[4]Fed. R. Civ. P. 24(a)(1) also allows for intervention as of right where the non-party "is given an unconditional right to intervene by a federal statute."  However, the proposed intervenors do not assert a right to intervene under this provision.

[5]Fed. R. Civ. P. 24(b)(1) also allows for permissive intervention if a non-party "is given a conditional right to intervene by a federal statute."  As indicated in footnote 1, however, the proposed intervenors do not assert the existence of a federal statute as the basis for their right to intervene either permissively or as of right.

[6]On April 27, 2018, the proposed intervenors filed a supplement to their motion to intervene.  Docket No. 11.  The Court will consider the supplement in resolving the motion to intervene.

as of right under Rule 24(a)(2).  Docket No. 9 at 5.  In the alternative, they contend that they satisfy the requirements for permissive intervention.  *Id.* at 15-16.

### A.  Compliance with Fed. R. Civ. P. 24(c)

The proposed intervenors collectively assert three principal interests in this litigation.  Their first two interests pertain to (1) preserving the party affiliation requirement in Colo. Rev. Stat. § 1-4-905(1) and (2) ensuring the honesty and integrity of petition circulators, based on alleged misrepresentations made by circulators working on behalf of Congressman Lamborn.  Docket No. 9 at 6-7.  Neither of these interests has any relevance to the subject matter of this lawsuit, which is the constitutionality of § 1-4-905(1)'s residency requirement.  The third interest, which is asserted primarily by Senator Hill, relates to the uncertainty and confusion that could result if Congressman Lamborn is permitted provisional access to the 2018 Republican Party ballot.  Docket No. 9 at 8-9.

Defendant argues that the motion to intervene should be denied based on the fact that the proposed intervenors have failed to comply with the procedural requirements of Fed. R. Civ. P. 24.  *See* Docket No. 13 at 2.  Rule 24(c) requires that a motion to intervene "state the grounds for intervention and be accompanied by a pleading that sets out the claim or defense for which intervention is sought."  The proposed intervenors have not attached any pleading to their motion to intervene.  Especially where, as here, the intervenors are attempting to assert claims that plaintiffs have not raised, compliance with Rule 24(c) is necessary for the Court and the existing parties to evaluate the propriety and effect of intervention.  *Compare Beckman Indus.,*

*Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 475 (9th Cir. 1992) ("[W]here, as here, the movant describes the basis for intervention with sufficient specificity to allow the district court to rule, its failure to submit a pleading is not grounds for reversal."). For example, it is doubtful whether the Court would have jurisdiction over many of the claims the intervenors want to assert, which appear to involve state law issues only.

The intervenors contend that the failure to comply with Rule 24(c) is not dispositive because the "motion to intervene, itself, provides sufficient notice of the claims the Intervenors intend to assert." Docket No. 23 at 2. The Court disagrees. The intervenors seek to add new claims to this litigation without clearly identifying the legal bases for those claims, who the claims are asserted against, and whether some of the claims are being asserted as defenses to plaintiffs' lawsuit. Under such circumstances, the failure to comply with Rule 24(c) is a sufficient ground on which to deny intervention.

Technical noncompliance with Rule 24(c) is not dispositive where the asserted basis for intervention is sufficiently specific to allow the court to evaluate the appropriateness of intervention. *Beckman Indus., Inc.*, 966 F.2d at 474. As discussed below, Senator Hill has asserted a defined and particularized interest in avoiding voter confusion. This interest is within the scope of plaintiffs' complaint. Accordingly, Senator Hill's failure to comply with Rule 24(c) is not, by itself, preclusive of his ability to intervene.[7]

---

[7] As further discussed below, however, Senator Hill has not asserted an interest that could be impaired by the outcome of this litigation. Accordingly, the Court ultimately finds that he has failed to satisfy the requirements for intervention.

### B. Intervention as of Right

#### 1. Timeliness

"The timeliness of a motion to intervene is assessed in light of all the circumstances, including the length of time since the applicant knew of his interest in the case, prejudice to the existing parties, prejudice to the applicant, and the existence of any unusual circumstances." *Utah Ass'n of Counties v. Clinton*, 255 F.3d 1246, 1250 (10th Cir. 2001). In assessing prejudice, courts look to the "prejudice caused by the intervenors' delay–not by the intervention itself." *Id.* at 1251.

There appears to be no dispute in this case that the motion to intervene is timely. *See* Docket No. 13 at 3 (conceding that "[t]he proposed intervenors' application appears to be timely"). Indeed, the proposed intervenors filed their motion only one day after plaintiffs filed their complaint and moved for a preliminary injunction. Accordingly, Rule 24's timeliness requirement has been satisfied. *See Am. Ass'n of People with Disabilities v. Herrera*, 257 F.R.D. 236, 251 (D.N.M. 2008) (finding motions to intervene timely where they were filed one week after filing of preliminary injunction motion).

#### 2. Impairment of a Protectable Interest[8]

Under Rule 24(a)(2), a party seeking to intervene as of right must "claim[] an interest relating to the property or transaction that is the subject of the action." Although "the contours of the interest requirement have not been clearly defined," *Utah Ass'n of Counties*, 255 F.3d at 1251, courts in this circuit have typically considered whether the

---

[8]As discussed below, "the question of impairment is not separate from the question of existence of an interest." *Utah Ass'n of Counties*, 255 F.3d at 1253. Accordingly, the Court will consider the second and third requirements for intervention as of right together.

proposed intervenor's interest is "direct, substantial, and legally protectable." *Coalition of Ariz./N.M. Counties for Stable Economic Growth v. Dep't of Interior*, 100 F.3d 837, 840, 842 (10th Cir. 1996). This inquiry is highly fact-specific. *Western Energy Alliance*, 877 F.3d at 1165. "A protectable interest is one that would be impeded by the disposition of the action." *Id.* (internal quotation marks omitted).

While "[t]he threshold for finding the requisite legally protected interest is not high," *Am. Ass'n of People with Disabilities*, 257 F.R.D. at 246, "an intervenor must specify a particularized interest" in the litigation and may not "raise interests or issues that fall outside of the issues raised" by the parties. *Id.* (citing *Chiles v. Thornburgh*, 865 F.2d 1197, 1212 (11th Cir. 1989); *Deus v. Allstate Ins. Co.*, 15 F.3d 506, 525 (5th Cir. 1994)).

Rule 24(a)(2) also requires proposed intervenors "to demonstrate that the disposition of [the] action may as a practical matter impair or impede their ability to protect their interest." *Utah Ass'n of Counties*, 255 F.3d at 1253. This element "is not separate from the question of existence of an interest." *Id.* (quoting *Natural Res. Def. Council v. U.S. Nuclear Regulatory Comm'n*, 578 F.2d 1341, 1345 (10th Cir. 1978)). Thus, although the burden to establish this element is "minimal" and only requires a showing "that impairment of [a] substantial legal interest is possible," *id.*, intervenors who cannot demonstrate that they have a protectable interest in the litigation will not be able to satisfy the impairment of interest requirement. *See Am. Ass'n of People with Disabilities*, 257 F.R.D. at 254 (finding that, because proposed intervenor failed to demonstrate protectable interest, she also failed to establish that disposition of the

9

action would impair or impede her ability to protect her interest).

The proposed intervenors assert four interests in the subject matter of this lawsuit: (1) preserving Colorado's residency requirement; (2) preventing party raiding by ensuring that circulators of nominating petitions are registered with the same party as the candidate for whom they are circulating the petitions; (3) ensuring the honesty and integrity of the signature collection process; and (4) avoiding the uncertainty and difficulty in campaigning for office caused by Congressman Lamborn's delay in bringing this lawsuit. Docket No. 9 at 6-8. In response, defendant argues that the proposed intervenors' claimed interests are either irrelevant to this case or too general to constitute a "direct, substantial, and legally protectable interest" in the litigation. *See* Docket No. 13 at 4-7.

The Court finds that plaintiffs' first assertion – that they "have an interest in defending Colorado's residency requirement," Docket No. 9 at 6 – is too conclusory and generalized to satisfy the requirements of Rule 24(a)(2). *See Public Serv. Co. of New Hampshire v. Patch*, 136 F.3d 197, 205 (1st Cir. 1998) ("It is settled beyond peradventure . . . that an undifferentiated, generalized interest in the outcome of an ongoing action is too porous a foundation on which to premise intervention as of right.").

As to the second interest asserted, the Court agrees with defendant that the proposed intervenors' concerns about preventing party raiding and preserving the party affiliation requirement in Colo. Rev. Stat. § 1-4-905(1) are far afield of the subject matter of this litigation. As demonstrated by the complaint, plaintiffs' challenge to § 1-4-905(1) is limited to the provision's residency requirement. *See* Docket No. 1 at 20, ¶ 1 (requesting that the "Court declare the residency requirement applicable to petition

10

circulators in Colorado Revised Statutes § 1-4-905(1) unconstitutional because it violates Plaintiffs' First Amendment free speech and free associational rights"); *id.* at 17 (characterizing sole claim for relief as "Violation of First Amendment and 42 U.S.C. § 1983 Action; Circulator Residency Requirement For Major Political Party Nominating Petitions"); *id.* at 17-19, ¶¶ 60, 62, 63, 67 (alleging that Colorado's "residency requirement . . . prevents" plaintiffs from "exercising [their] core political speech and associational rights" without "serv[ing] any meaningful or essential function").[9] However, the intervenors do not draw any connection between this requirement and the issue of party raiding. Their asserted interests in preventing party raiding and preserving the party affiliation requirement are therefore insufficient to warrant intervention as of right under Rule 24(a)(2). *See* Maynard, 2010 WL 2775569, at *3 (finding that intervention as of right was not warranted where non-party's claims were not implicated in lawsuit); *United States v. Alabama*, 2006 WL 2290726, at *4 (M.D. Ala. Aug. 8, 2006) (finding that, because intervenors' asserted interest was not at issue in litigation, intervenors had failed to satisfy the requirements for intervention as of right).[10]

---

[9]To the extent plaintiffs' request for an injunction preventing enforcement of the "residency and voter registration requirements" under Colo. Rev. Stat. § 1-4-905(1) creates any ambiguity on this point, *see* Docket No. 1 at 20, ¶ 2, the allegation regarding "voter registration" appears to be an artifact of a dropped claim. Plaintiffs' remaining allegations are insufficient to state a constitutional claim based on the party affiliation requirement. In any event, the motion for preliminary injunction is solely focused on the residency requirement.

[10]The fact that the intervenors' interest in preventing party raiding is entirely unconnected to the subject matter of this action is made further apparent by considering the effect that a disposition favorable to plaintiffs would have on that interest. A favorable outcome would mean invalidation of the residency requirement and certification of Congressman Lamborn to the ballot. However, the intervenors make no assertion that invalidation of the residency requirement would make party

11

The intervenors' third interest is also inadequate under Rule 24(a)(2). The intervenors contend that they are entitled to intervene as of right based on their interest in "ensuring the honesty and integrity of circulators." Docket No. 9 at 7. However, "ensuring the honesty and integrity of circulators" is a generalized concern shared by every participant in Colorado's electoral process. It therefore does not constitute the type of particularized interest necessary to satisfy the requirements for intervention as of right. *See Am. Ass'n of People with Disabilities*, 257 F.R.D. at 251 (finding that, because intervenor "share[d] his interest [in registration fraud] with almost everyone else, and ha[d] no particularized interest in th[e] case, [his] interest [was] a generalized one and not the sort of particularized interest that is required for intervention [as] of right"). The intervenors suggest that their interest is sufficiently particularized based on two facts: (1) some of the intervenors challenged the sufficiency of Congressman Lamborn's nominating petition in state court; and (2) at least one intervenor – Eric Baldini – was misled into signing Congressman Lamborn's petition. *See* Docket No. 9 at 7. Even if these facts were sufficient to establish a particularized interest, however, the intervenors have not explained how their interest in ensuring the honesty and integrity of circulators could be impeded by the outcome of this lawsuit. The intervenors assert that they "will be harmed if circulators who misrepresent themselves are allowed to undermine the integrity of the party nominating process." *Id.* at 10. Additionally, the

---

raiding more likely. Additionally, there has been no allegation that Mr. Tipple failed to comply with the party affiliation requirement. *See Kuhn*, No. 18SA176, at *7 n.2 (noting that "[t]he protesters do not question the identity of the circulators, their status as U.S. citizens, their ages, their compliance with the affidavit requirements, or their status as registered Republicans in Colorado's statewide voter registration system before they collected the signatures in question").

intervenors who brought the action in state court contend that a court order placing Congressman Lamborn on the ballot will "impair their particular efforts to enforce all aspects of Colorado's candidate petition requirements, not merely Colorado's residency requirements." *Id.* But this argument impermissibly attempts to expand the scope of this lawsuit. *See Deus*, 15 F.3d at 525 (noting that intervention "is not intended to allow the creation of whole new lawsuits by the intervenors"). Plaintiffs only challenge Colorado's residency requirement. Because the intervenors have failed to explain how the invalidation of that requirement or the certification of Congressman Lamborn to the 2018 primary ballot would impair their ability to ensure the honesty and integrity of circulators, they have not satisfied the requirements of Rule 24(a)(2).

The Court reaches the same conclusion as to the intervenors' asserted interest in avoiding voter confusion. *See* Docket No. 9 at 8. Senator Hill asserts that he "has a strong interest in avoiding confusion, knowing who the other contestants are, and how he must communicate to voters in this competitive environment." *Id.* at 8-9. Because Senator Hill is running in the 2018 Republican primary for the U.S. House of Representatives in the Fifth Congressional District, the Court agrees that his interest in preventing voter confusion is sufficiently particularized to justify intervention on that limited issue.[11] However, Senator Hill has failed to demonstrate that his interest could be impeded if Congressman Lamborn is included on the primary ballot. *See id.* at 10-

---

[11]Defendant argues, without offering any support, that "the proposed intervenors' asserted fear of 'uncertainty and delay,' as well as 'substantial confusion among voters' . . . has no bearing on the showing necessary under Fed. R. Civ. P. 24(a)." Docket No. 13 at 6. As the Tenth Circuit has stated, however, "[t]he interest of the intervenor is . . . measured by whether the interest the intervenor claims is *related to the property that is the subject of the action*." *Utah Ass'n of Counties*, 255 F.3d at 1252.

13

11. As defendant argues, "the schedule in this case does not call for that temporary remedy because the preliminary injunction hearing will be completed before the ballot certification deadline." Docket No. 13 at 6. In other words, the Court's preliminary injunction ruling will determine whether Congressman Lamborn is placed on the ballot for the duration of the Republican primary or is not placed on the ballot at all. The Court fails to see how such a decision could give rise to voter confusion. The intervenors point out that "County election officials must send ballots to military and overseas voters by May 12, 2018" and will begin sending ballots to all voters on June 4, 2018. Docket No. 9 at 10-11. However, the intervenors have made no showing that the issue in this case, at least as it relates to the primary election ballot, cannot be resolved by that time. The intervenors have therefore failed to demonstrate that their fourth asserted interest in this lawsuit satisfies the requirements of Rule 24(a)(2).

### 3. Adequacy of Representation

Under Rule 24(a)(2), the intervenors must also demonstrate that they are not adequately represented in the litigation. The burden of showing inadequate representation is "minimal." *Western Energy Alliance v. Zinke*, 877 F.3d 1157, 1168 (10th Cir. 2017) (bracket omitted). Accordingly, "the possibility of divergence of interest need not be great in order" for the intervenors to satisfy this element. *Id.* The Tenth Circuit has further recognized that "the government cannot adequately represent the interests of a private intervenor *and* the interests of the public," unless the case presents a single issue, the government agency's position is clear, and there is no evidence that the agency's position might be subject to change. *Id.*; *see also Utah*

*Ass'n of Counties*, 255 F.3d at 1255-56 ("[T]he government's representation of the public interest generally cannot be assumed to be identical to the individual parochial interest of a particular member of the public merely because both entities occupy the same posture in the litigation.").

In addition to asserting generally that a public entity cannot represent both public and private interests, the proposed intervenors identify four ways in which they are not adequately represented in the litigation. First, they contend that the "Secretary's objective is to defend the constitutionality of Colorado law in its entirety," whereas the intervenors will argue that the Court cannot order certification of Congressman Lamborn to the ballot even if the residency requirement is held to be unconstitutional. *See* Docket No. 9 at 12. Specifically, the intervenors assert that, notwithstanding the validity or invalidity of the residency requirement, Congressman Lamborn "did not obtain adequate signatures" to be placed on the ballot. *Id.* Second, the intervenors argue that they "are particularly focused on validating the associational rights of the Republican Party," which "requires different analysis and evidence." *Id.* at 12-13. Third, the intervenors state that, unlike the Secretary, they will argue that the residency and party affiliation requirements impose only minimal burdens on out-of-state circulators and thus should not be subject to strict scrutiny. *Id.* at 13. The intervenors' final contention is that they will present evidence beyond the scope of what the Secretary plans to introduce – namely, testimony regarding alleged misrepresentations made by circulators and the importance of maintaining party cohesion. *Id.*[12]

---

[12]In a supplement to their motion to intervene, the proposed intervenors attempt to bolster their inadequate representation argument by citing comments by the deputy

The Court finds that the intervenors' arguments do not demonstrate inadequate representation so much as their desire to expand the scope of this lawsuit. The intervenors' claims regarding alleged misrepresentations by petition circulators, and their asserted focus on validating the associational rights of the Republican party, are not relevant to the constitutionality of Colorado's residency requirement. *See San Juan Cty., Utah v. United States*, 503 F.3d 1163, 1206 (10th Cir. 2007) (declining to "address the propriety of intervention with respect to any additional issues that may be raised" and holding that intervenor would be adequately represented by the existing defendants with respect to the claim at issue in the litigation), *abrogated on other grounds by Hollingsworth v. Perry*, 570 U.S. 693 (2013). Further, while it is often the case that "the government cannot adequately represent the interests of a private intervenor *and* the interests of the public," *Western Energy Alliance*, 877 F.3d at 1168, this case "presents only a single issue" on which the Secretary's position is clear. *Id.* Other than their unpersuasive attempt to manufacture disagreement based on the Secretary's purported commitment to ballot access, *see* Docket No. 11 at 1-2, the intervenors have not asserted any argument that their relevant interests in this litigation diverge from the interests of the Secretary.

---

Secretary of State that her office "has always favored access to the ballot." Docket No. 11 at 1-2. The intervenors contend that these comments reflect the parties' divergent interests: "the Secretary is focused on the process – ballot access and (secondarily) the constitutionality of Colorado's laws; whereas the Proposed Intervenors care about the remedy, namely whether this Court may order Lamborn on the ballot." *Id.* at 2. However, the Court fails to see how the Secretary's purported interest in ensuring ballot access within the guidelines set by Colorado law will handicap the Secretary's ability to vigorously defend the constitutionality of the residency requirement. Certainly, there is no indication that the "Secretary wants Lamborn on the ballot, regardless of the legal arguments." *Id.* at 3.

The only claim that might be relevant to the adequacy of representation in this lawsuit relates to the standard of scrutiny applicable to the residency requirement. As the Tenth Circuit has stated, however, "representation is not inadequate simply because the applicant and the representative disagree regarding the facts or law of the case." *Sanguine, Ltd. v. U.S. Dep't of Interior*, 736 F.2d 1416, 1419 (10th Cir. 1984).

Finally, to the extent that any inadequacy exists, the intervenors have not demonstrated that they have protectable interests that might be impaired absent intervention. That fact is a sufficient basis, standing alone, to deny intervention. *See Maynard*, 2010 WL 2775569, at *3 ("Failure to satisfy even one of the[] requirements is sufficient to warrant denial of a motion to intervene as a matter of right." (quoting *Commodity Futures Trading Comm'n v. Heritage Capital Advisory Servs., Ltd.*, 736 F.2d 384, 386 (7th Cir. 1984)).

### C. Permissive Intervention

Because the Court finds that the proposed intervenors are not entitled to intervention as of right, the Court must consider the intervenors' alternative argument that they satisfy the requirements for permissive intervention. Docket No. 9 at 15-16.[13] In exercising its discretion to grant or deny permissive intervention, a "court must consider whether the intervention will unduly delay or prejudice adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). Additionally, a "finding that existing parties adequately protect prospective intervenors' interests will support a denial of

---

[13]In their briefing, the proposed intervenors refer to the requirements of Colo. R. Civ. P. 24(b). Docket No. 9 at 15-16. Based on the arguments raised by the intervenors, however, the requirements under that provision appear to be substantially similar to the requirements for permissive intervention under Fed. R. Civ. P. 24(b).

17

permissive intervention." *Am. Ass'n of People with Disabilities*, 257 F.R.D. at 249; *see also Tri-State Generation and Transmission Ass'n, Inc. v. New Mexico Public Regulation Comm'n*, 787 F.3d 1068, 1075 (10th Cir. 2015) (noting that court had elsewhere "affirmed denial of permissive intervention" on ground that prospective intervenor's interests were adequately represented by existing parties).

The intervenors assert that their participation in this litigation "will substantially benefit the Court's measured consideration of the claims, and will serve the purpose of assisting the court in making a decision about the constitutionality of Colorado laws that play a key role in the political process." Docket No. 9 at 15-16. The Court disagrees. As evidenced by the intervenors' arguments regarding intervention as of right, the intervenors intend to expand the scope of this lawsuit to include arguments about alleged misrepresentations made by individual circulators and the importance of Colorado's party affiliation requirement. By taking the focus off the central issue in this case, such diversions will only delay and prejudice the resolution of the existing parties' dispute. The Court's concerns about delay and prejudice are particularly acute given the time-sensitive nature of this litigation. The deadline for the Secretary to certify candidates to the Republican primary ballot is in less than a week. *See* Docket No. 13 at 6 n. 1; *see also* Docket No. 1 at 2, ¶ 4. *See* Docket No. 1 at 2, ¶ 4. Given these circumstances and the Court's finding that the Secretary is adequately representing the intervenors' interests in defending the residency requirement, the sole issue in this case, permissive intervention would be inappropriate. *See Am. Ass'n of People with Disabilities*, 257 F.R.D. at 259 (denying permissive intervention where litigation was

time-sensitive and intervenors were adequately represented by existing parties).

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the Partially-Unopposed Motion to Intervene [Docket No. 9] is **DENIED**. It is further

**ORDERED** that the Court will consider those portions of the Intervenors' Response to Motion for Preliminary Injunction [Docket No. 26] that are relevant to plaintiffs' constitutional challenge as an amicus curiae brief.

DATED April 28, 2018.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge